743 So.2d 1008 (1999)
Anthony Darnell JACKSON, Appellant,
v.
STATE of Mississippi, Appellee.
No. 96-KA-01035 COA.
Court of Appeals of Mississippi.
April 6, 1999.
Rehearing Denied June 22, 1999.
Certiorari Denied September 9, 1999.
*1009 George T. Holmes, Jackson, Attorney for Appellant.
Office of the Attorney General by W. Glenn Watts, Attorney for Appellee.
BEFORE McMILLIN, P.J., COLEMAN, AND SOUTHWICK, JJ.
COLEMAN, J., for the Court:
¶ 1. The State of Mississippi prosecuted the appellant, Anthony D. Jackson, for the offense of gratification of lust.[1] The trial jury found Jackson "Guilty as charged," pursuant to which the trial court incurred its final judgment of conviction and later its order of sentence by which it sentenced Jackson "[t]o serve a term of ten (10) years in the custody of the Mississippi Department of Corrections...." After *1010 the trial court denied Jackson's motion for a new trial or a judgment notwithstanding the verdict, Jackson perfected an appeal from the trial court's judgment of conviction and order of sentence. Jackson presents for our review and resolution the following four issues, which we quote verbatim from his statement of issues required by Rule 28(a)(3) of the Mississippi Rules of Appellate Procedure:

Issue # 1: Whether the trial court erred in allowing the State to introduce irrelevant prejudicial evidence of alleged wrongdoing outside the scope of the indictment?

Issue # 2: Whether the evidence adduced at trial supports the charges asserted in the indictment?

Issue # 3: Whether the court erred in allowing improper opinion evidence?

Issue # 4. Did the trial court err in allowing ... hearsay testimony under the "Tender Years" Exception?
This Court resolves all four issues adversely to Jackson and affirms the trial court's judgment of conviction and order of sentence.

I. FACTS
¶ 2. During the early evening of Friday, November 10, 1995, Martha Doe and her daughter, Jane Doe,[2] were preparing for a "sleep-over" to which they had invited Jane's friends for the purpose of celebrating Jane's eighth birthday, which fell on the following Sunday, November 12. As they were preparing for the advent of Jane's friends, Jane told her mother that "Anthony Jackson had fooled with her." When Martha Doe, Jane's mother, asked Jane, "[W]hat did she mean?", Jane replied "Anthony had stuck his [penis] in her butt." Jane then told her mother that it had happened at Minnie Carter's house, where Jane had been going after school "for a number of years." Minnie Carter was Anthony Jackson's grandmother, and Anthony Jackson lived in his grandmother's house.
¶ 3. It was not until after she and her husband had gone to bed the following Sunday night that Martha Doe told her husband what their daughter had told her as they prepared for the "sleep-over." Jane's father immediately arose from his bed and went to the police department alone. The next morning, Monday, November 13, 1995 at eight o'clock Mr. and Mrs. Doe took Jane to the police department in the city of Madison where Officers Mike Chapman and Stacy Vaughn took a statement from Jane, which they videotaped. Martha Doe took Jane to a physician at the Children's Medical Group the next day, but that physician referred Mrs. Doe and her daughter Jane to the University Medical Center. On November 17, 1995, Jane told Angela Davis, a teacher at her school, that "there was a man [at Minnie Carter's house] named Anthony and that when she would go over sometimes, almost every time she went over,... he would touch her private with his private and that he would squirt some stuff on her and that sometimes it hurt."
¶ 4. Martha Doe took Jane to Dr. Maude Wright, a child psychiatrist, who counseled Jane on at least two occasions in November and December of 1995 about her encounters with Jackson.

II. REVIEW, ANALYSIS, AND RESOLUTION OF THE ISSUES

A. Jackson's first issue

1. Jackson's argument
¶ 5. In his first issue, Jackson complains that Jane Doe, Jane Doe's brother, whom we identify as "Joe," and Dr. Maude Wright, a child psychiatrist who had twice examined Jane Doe, "all testified to events prior to the indictment period, occurring in *1011 1994." However, Jackson focuses his argument on the testimony of Jane Doe's brother, Joe. Jackson asserts that before the State called its first witness, Martha Doe, his counsel "moved the court to limit the prosecution's evidence to the time period of the indictment, January 1, 1995 through May 31, 1995." Jackson writes that "[i]n response, the State implied to the court and the defense that it would so limit the evidence, to which the trial court responded, `All right, I think we're clear on that, then." Jackson interprets the trial court's response as "informing the parties that the motion was granted and [that] the evidence would be limited to the indictment time period." Finally, Jackson invites our attention to the trial court's admonition to the prosecutor before he called the State's first witness, "Again, caution your witnesses."
¶ 6. Jackson focuses his argument on the testimony of Jane Doe's brother that during the fall and spring of 1995, when her brother was in the seventh grade, he "walked in on" Jackson and Jane Doe while they were in Ms. Minnie Carter's bedroom one day after school. When Joe Doe walked into the bedroom, he "saw [Jane] laying [sic] across the bed, and Anthony [Jackson] was standing in front of her with his pants unzipped." When Joe Doe asked Anthony "what he was doing," Anthony did not respond. Joe Doe then "walked out the room, and [Jane] came behind [him]." While Joe Doe could not remember whether his encounter in Ms. Minnie Carter's bedroom with Jackson and his sister occurred in the fall or the spring of his being in the seventh grade, Joe Doe was definite that the encounter had occurred while he was in the seventh grade.
¶ 7. Under Jackson's counsel's cross-examination, Joe stated that as of the date of the trial, August 19, 1996, he was in the ninth grade. Jackson's counsel asked, "What grade were you last year?" Joe replied, "Eighth." Jackson's counsel then asked, "So this didn't happen last year, did it?" Jane's brother replied, "No." On redirect examination, the prosecutor asked Joe Doe, "[W]hen exactly were you in the seventh grade? What school year was it?" Doe replied, "ninety-four/ninety-five."

2. The State's response
¶ 8. The State counters that Jackson's counsel objected only one time throughout the State's direct examination of Joe Doe. When the prosecutor asked Doe, "Did you ever walk in on Anthony and your sister?," Jackson's counsel interjected, "I object to leading." The trial judge overruled the objection and allowed Joe Doe to answer the question. His answer was "Yes." Thus, the State contends that Jackson has waived his first issue in his appeal because his objection before this Court is not the same as his objection before the trial court. The State cites Haddox v. State, 636 So.2d 1229, 1240 (Miss.1994), in which the supreme court explained: "The assertion on appeal of grounds for an objection which was not the assertion at trial is not an issue properly reserved on appeal." (citations omitted). Nevertheless, the State relies on the prosecutor's re-direct examination of Joe Doe by which it established that Jane Doe's encounter with Anthony Jackson in Jackson's grandmother's bedroom quoting from the State's brief"occurred at some time during the 1994 to 1995 school year." Thus, the State concludes that the 1994-95 school year "would include the period January 1, 1995 to May 31, 1995," which is the period of time during which the indictment charged that Jackson had molested Jane Doe.

3. Analysis and Resolution of the issue
¶ 9. Aside from the procedural bar urged by the State, itself a sufficient basis on which this Court might rest its resolution of Jackson's first issue adversely to him, this Court is of the opinion that Jane Doe's brother's testimony that he had seen Jackson standing over Jane Doe, who was lying on the bed, with his pants unzipped was not erroneous. We accept the State's argument that the encounter which Joe Doe *1012 witnessed may well have fallen within the time-frame which the indictment established. Joe Doe's testimony that the encounter occurred while he was in the seventh grade during the academic year of 1994-95 places it either before or after January 1, 1995, on or about which date the indictment charged that Jackson's crime against Jane Doe began. If the encounter occurred after January 1, 1995, then Joe Doe's testimony about it was directly relevant to the nature of the crime for which the grand jury had indicted Jackson.
¶ 10. If the encounter had occurred before January 1, 1995, this Court still finds no error. The Mississippi Supreme Court has held repeatedly that evidence of similar sexual acts committed by a defendant on or with the same victim, especially if the victim is a child, is relevant and, therefore, admissible. See Nicholson v. State, 704 So.2d 81 (¶ 15) (Miss.1997) (holding that "`substantially similar acts with the same person, that is, sexual acts of the same general type as those charged in the indictment,' are probative and admissible") (quoting Elmore v. State, 510 So.2d 127, 131 (Miss.1987)).
¶ 11. Although Jackson concedes that "there is a generally recognized exception in sexual charges involving children that evidence of prior acts is admissible," (citing) Woodruff v. State, 518 So.2d 669, 671 (Miss.1988), he contends that "there are two distinct factors in this case which distinguish it from the [foregoing] general rule." Jackson identifies the first factor as his "alibi defense which was thwarted by the broad expanse of time of the allegations...." The second factor is that while Jackson became eighteen years old on July 7, 1994, the State adduced no evidence that his molestation, or fondling, of Jane Doe occurred after his eighteenth birthday. This Court elects to deal with these two factors in its analysis and review of Jackson's second issue, which immediately follows.
¶ 12. With regard to Jackson's first issue, Rule 103(a) of the Mississippi Rules of Evidence aids our resolution of it. Rule 103(a) provides that "[e]rror may not be predicated upon a ruling which admits or excludes evidence unless a substantial right of the party is affected...." M.R.E. 103(a). Rule 103(a) also requires that if "the ruling is one admitting evidence, a timely objection or motion to strike appears of record, stating the specific ground of objection, if the specific ground was not apparent from the context...." M.R.E. 103(a)(1). We have noted that Jackson's counsel objected but one time to Joe Doe's testimony, and his objection rested on the ground that the prosecutor's question was leading. Given the admissibility of evidence of other similar sexual acts of or by the accused with the victim, and further given Jackson's failure to identify the "substantial right" which Joe Doe's testimony "affected," we resolve Jackson's first issue against him.

B. Jackson's second issue

1. Jackson's argument
¶ 13. In support of his second issue, which is "Whether the evidence adduced at trial supports the charges asserted in the indictment?," Jackson argues that "there was no evidence introduced in the trial upon which a reasonable jury could conclude that the alleged crime occurred during the period of time set forth in the indictment, if it occurred at all." He then continues, "Consequentially, there were substantial, material and fatal variances between the indictment and the evidence. The indictment was never amended." Then, more specifically, Jackson contends that because Section 97-3-23 of the Mississippi Code required that he be "above the age of eighteen years," the State failed to present evidence that any of the acts about which Jane Doe testified occurred after Jackson's eighteenth birthday on July 7, 1994. Because Jackson asserted an alibi defense throughout the entire five-month period from January 1 through May 31, *1013 1995, he further argues that the trial court's allowing the State to adduce evidence that he molested Jane Doe before January 1, 1995, so "prejudicially affected [his] alibi defense," that he is entitled to a new trial. In his brief, Jackson complains that "[a]fter [he] gave his notice of alibi, the State merely made its evidence so broad in time that it was impossible to offer any meaningful alibi." Jackson concludes by suggesting that his second issue "may also be considered in conjunction with [his first issue]." The State counters Jackson's argument by exhaustively reviewing and analyzing the testimony of (1) Jane Doe, (2) Jane Doe's mother, (3) Madison Police Officer Mike Chapman, and (4) Dr. Maude Wright, a child psychiatrist who had examined Jane Doe, to demonstrate that the State did adduce evidence that Jackson molested Jane Doe sometime during the five-month period which the indictment specified.

2. Analysis and resolution of the issue
¶ 14. Our analysis of Jackson's second issue begins with the observation that Jackson marshaled no challenge to the five-month period of time during which the indictment charged that he had molested, or fondled, Jane Doe. In Morris v. State, 595 So.2d 840, 841 (Miss.1991), the defendant argued that the indictment was insufficient because it stated that the alleged sexual abuse "occurred on the weekends or when the mother wasn't home during the night." However, the Mississippi Supreme Court held that the appellant had been sufficiently apprised of the charges against him. Id. at 842. The supreme court emphasized that "the victim's testimony amply illustrate[d] the fact that the State could not narrow the time frame any more than it did." Id. Thus, our analysis begins with the premise that the five-month period between January 1 and May 31, 1995 as charged by the indictment returned against Jackson was appropriate. Next, we observe that Jackson's entire argument in support of his issue focuses entirely on the relationship between the State's evidence of when Jackson molested Jane Doe and the five-month period which the indictment charged. If the State adduced sufficient evidence to establish that Jackson fondled, or molested, Jane Doe at any time between January 1 and May 31, 1995, then this Court must resolve Jackson's second issue adversely to him. We now review the testimony of the State's witnesses.
¶ 15. Jane Doe testified that she was in the first grade when Jackson touched her buttocks with his penis. She further testified that she was in the third grade when this case was tried in August 1996. Thus, Jane Doe would have been in the first grade in 1994-95, a fact which is consistent with the time-period of January 1 through May 31, 1995, specified in the indictment.
¶ 16. Martha Doe testified that her daughter Jane first told her about what Jackson had done to Jane early on Friday evening, November 10, 1995. Martha Doe also testified that Jane told her that Jackson had done this "[o]ver a hundred times." Mrs. Doe explained that "[d]uring the whole ... first grade year, [she] would always notice this ... smell on her, almost like a man." Mrs. Doe established that her daughter was in the first grade "during the spring of 1995" and that her daughter was then seven years old. During the State's direct examination of Dr. Maude Wright, the child psychiatrist who had treated Jane Doe, the prosecutor inquired without Jackson's counsel's objection, "And Dr. Wright, as for purposes of diagnosis and treatment, were you able to ascertain that these events occurred during the spring of '95?" Dr. Wright answered, "Yes, I was able to determine that, as close as [Jane Doe] could determine, that the most recent time it happened was during that spring."
¶ 17. The following snippet of the testimony of Officer Mike Chapman, an investigator with the Madison Police Department, is relevant to Jackson's second issue:

*1014 Q. Okay. Officer Chapman, throughout the course of your investigation talking to witnesses including the victim, were you able to ascertain a time frame when these events occurred?
A. Yes, sir.
Q. And what was that time frame?
A. January 1, 1995, to May 31st, 1995.
Jackson's counsel did not object to either the foregoing questions or the foregoing answers. From our review of the foregoing testimony, we conclude that the State's evidence was sufficient to establish that Jackson's fondling of Jane Doe occurred between the dates charged in Jackson's indictment.
¶ 18. Jackson further complains that after he "served a notice of alibi, the State did a bait and switch broadening the time span of the alleged criminal activity consequently resulting in Jackson['s] having to defend vague, unspecific, un-dated accusations to have occurred over one-and-onehalf years, when the indictment only covered a five-month period." The State responds by noting that the "alibi defense came from the testimony of [Jackson's] grandmother, mother and sister." For example, when Jackson's counsel asked Jackson's grandmother, Minnie Carter, who ran the day-care center to which Jane Doe went after school, "Would Anthony Jackson ever be at the house during the time that [Jane Doe] was there?," Ms. Carter answered, "Yes, but he be in back with the dogs." Anthony Jackson's mother testified that although she had been medically disabled since July 1994, she had begun to help her mother take care of Jane Doe after her mother, Ms. Minnie Carter, had suffered a stroke. However, the gist of Jackson's mother's testimony was that she had never seen Jackson in Jane Doe's presence while Jane Doe was at Ms. Minnie Carter's home. Jackson's mother further testified that her son "usually got home around maybe 5:00, 5:30, sometimes later if he had to stay over at school." The record reflects that Anthony Jackson worked at the Rosa Scott Middle School as a custodian. Anthony Jackson's sister, Leah Jackson, testified that she worked at her regular job "up until May of 1995" and that while she worked at her regular job, she usually arrived at Ms. Minnie Carter's home "around 6:00," after she "got off at 5:45." Leah Jackson also testified that she "rarely" saw Jane Doe "because of the fact that [Jackson and she] had another job [cleaning a house in Rankin County they] had to go to right after [she finished her regular job at 5:45 p.m.]."
¶ 19. During the State's cross-examination of Anthony Johnson, the assistant district attorney asked Jackson, "You were never at that [Ms. Minnie Carter's] house at the same time of day [Jane Doe] was?" Anthony Jackson replied, "No." Under further cross-examination, Anthony Jackson was asked: "Were you ever at that house at the same time as [Jane Doe]?" Anthony Jackson replied, "In the tenth grade, yes." The assistant district attorney immediately responded, "No other times?," and Jackson answered, "No."
¶ 20. Alibi is "[a] defense that places the defendant at the relevant time of crime in a different place than the scene involved and so removed therefrom as to render it impossible for him to be the guilty party." Black's Law Dictionary (6th ed.1990). Our review of Jackson's evidence of his alibi that he was "in a different place than the scene involved," creates uncertainty that his evidence established a "classic" alibi. Both Jackson's grandmother and Jackson placed him at his grandmother's house, if not inside her house. Moreover, this Court finds that Jackson's counsel requested no instruction regarding his alibi defense. The adequacy of the State's evidence that Jackson's fondling Jane Doe occurred between January 1 and May 31, 1995, combined with the nature of Jackson's "alibi" defense compels this Court to its conclusion that no error lies in this aspect of Jackson's argument that "the trial court erred in allowing the State to introduce irrelevant, prejudicial *1015 evidence of alleged wrongdoing outside the scope of the indictment."
¶ 21. This Court also rejects Jackson's argument that the State failed to adduce evidence that he molested Jane Doe after Jackson became eighteen years old on July 7, 1994. If the State's evidence was sufficient to establish that Jane Doe had been fondled between January 1 and May 31, 1995, then perforce it was sufficient to establish that Jackson was eighteen years old throughout this entire period of time. In summary, this Court resolves Jackson's second issue adversely to him and affirms the trial court's denial of Jackson's motion for a judgment notwithstanding the verdict.

C. Jackson's third issue

1. Jackson and the State's arguments
¶ 22. As his third issue, Jackson asks, "Whether the court erred in allowing improper opinion evidence [from Dr. Maude Wright, a child psychiatrist]?" He rests his argument on two grounds. First, Jackson asserts that the trial court erred when it allowed Dr. Wright to testify regarding a "child sexual abuse or profile" contrary to Hosford v. State, 560 So.2d 163, 168 (Miss.1990). Second, Jackson argues that the trial court erred by allowing Dr. Wright to state that she believed that Jane was telling the truth about being sexually abused, which had the erroneous effect of bolstering Jane Doe's testimony. In response, the State argues that Dr. Wright's testimony was admissible under the exception to hearsay established by Mississippi Rule of Evidence 802(4) which allows the admission of statements made by patients to their physicians for the purpose of medical diagnosis or treatment. The State also asserts that Jackson complains for the first time on appeal that Dr. Wright's testimony constituted impermissible bolstering of Jane Doe's testimony. It bases this assertion on Jackson's failure to object when the State elicited this testimony from Dr. Wright. We will deal with Jackson's arguments in the order that he offered them for our analysis.

2. Dr. Wright's testimony about a "child sexual abuse or profile"
¶ 23. Dr. Maude Wright testified that she "attended Tufts University School of Medicine in Boston, Massachusetts," that she had done "a pediatric internship at Boston City Hospital," that she had completed "an adult and general psychiatry residency at University of Southern California and ... a child psychiatry residency one year at the University of Southern California, the second year at University of Mississippi Medical Center." After Jackson's counsel completed his voir dire examination of Dr. Wright, the judge announced, "The witness will be accepted as an expert in the field of child psychology." No doubt, he intended to accept Dr. Wright as an expert in the field of child psychiatrynot child psychology. Regardless, this Court notes that Jackson does not challenge the judge's acceptance of Dr. Wright as an expert in the field of child psychiatry.
¶ 24. Instead, Jackson urges this Court to declare error in Dr. Wright's testimony regarding "a child sexual abuse syndrome or profile." Jackson correctly cites Hosford v. State, 560 So.2d 163, 168 (Miss. 1990), in which the Mississippi Supreme Court opined, "At present, it is doubtful that any such profile or syndrome is generally accepted by the scientific community. Until such time as a profile has been scientifically established, courts should be reluctant to allow expert testimony that a child displays the so-called typical characteristics of other victims." (citations omitted). The supreme court concluded that while the portion of a child therapist's testimony regarding "a child sexual abuse syndrome or profile" was "improper," her testimony was "harmless on the record before [the Court]" because "[t]he entire defense strategy in this case was predicated not on whether the victim was sexually abused but on the assumption that the *1016 child had been sexually abused by person(s) other than the defendant." Hosford, 560 So.2d at 168.
¶ 25. A review of Dr. Wright's testimony found in the record in this case reveals, contrary to Jackson's argument, that while Dr. Wright testified about her examination and interaction with Jane Doe, including Jane Doe's telling her in somewhat graphic detail what Anthony Jackson had done to her, Dr. Wright never opined that Jane Doe had been sexually abused. Neither did Dr. Wright ever mention "a child sexual abuse syndrome or profile." Because the record does not support Jackson's assertion that the trial judge erred by allowing Dr. Wright to opine that Jane Doe had been sexually abused based upon "a child sexual abuse syndrome or profile," this Court summarily resolves this first aspect of Jackson's third issue adversely to him.

3. Dr. Wright's bolstering Jane Doe's testimony that Jackson had abused her sexually
¶ 26. During the State's re-direct examination of Dr. Wright, she testified that "ninety percent of the time, you're assuming that a child is telling the truth as to sexual abuse." She qualified her testimony by explaining that she would "be looking for evidence that it's not the truth." The following re-direct examination ensued:
Q. Dr. Wright, was that assumption of truth made with [Jane Doe]?
A. It was.
Q. And was it ever disprove[d]?
A. It was never disprove[d].
Jackson cites Griffith v. State, 584 So.2d 383, 386 (Miss.1991), to support his assertion that "[i]t has been unequivocally established in this state that opinion evidence as to a witness's veracity, particularly a medical opinion in child abuse cases, is reversible error." It is true that the supreme court reversed and remanded appellant Griffith's conviction of felonious sexual penetration. Griffith, 584 So.2d at 388. However, the supreme court based its reversal on a State's witness being "allowed to testify as to statements made by [Griffith's victim]." Id. at 386. Because the supreme court was remanding the case for another trial, it addressed the matter of the same witness's being "allowed to testify that in her opinion, [Griffith's victim] had told her the truth because [she] `could not have told this story twice and almost word for word if she had not experienced it. That is the reason why I truly believe her.'" Id. The supreme court observed that "[a] direct opinion offered by a witness in a child sexual abuse case as to the child's veracity has been held by a majority of courts to be inadmissible." Id. (citations omitted). Stating that "[w]e have indicated that such testimony is, at best, `of dubious competency,'" the supreme court cautioned the trial court on remand "against allowing direct comments as to [Griffith's victim's] veracity." Id. at 387.
¶ 27. The short answer to Jackson's issue is that his counsel's failure to object to the quoted portion of the State's redirect examination which we quoted also fails to preserve this aspect of this issue for our review. See Haddox, 636 So.2d at 1240. Even so, this Court does not interpret Dr. Wright's testimony as bolstering Jane Doe's testimony about what Anthony Jackson had done to her. Instead, this Court observes that the quoted re-direct examination about which Jackson complains in this issue was but a logical extension of her preliminary explanation that she extended an assumption to any patient that her patient was telling her the truth. Dr. Wright continued to testify that regardless of that assumption, she continued to look for evidence that her patient was not telling her the truth. She then specified that in Jane Doe's case, her "assumption of truth," which she made with Jane Doe, "was never disprove[d]." Such testimony does not constitute "a direct opinion offered by a witness in a child sexual abuse case as to the child's veracity" which the *1017 supreme court indicated was "at best, `of dubious competency.'" See Griffith, 584 So.2d at 386-87.
¶ 28. For the foregoing reasons, we decline to place the trial court in error as Jackson argues should be done, and we resolve his third issue adversely to him.

D. Jackson's fourth issue

1. Procedural basis for this issue
¶ 29. The State acknowledged to the trial court that it anticipated adducing hearsay testimony from Martha Doe and from Angela Davis, a teacher at Madison Station Elementary School, about Jane Doe's statements to them concerning Jackson's abusing her sexually. The trial court conducted a hearing before the State called Martha Doe as its first witness to determine whether "the time, content, and circumstances of [Jane Doe's] statement[s] provide[d] substantial indicia of reliability" as Rule 803(25) of the Mississippi Rules of Evidence requires.[3]
¶ 30. Martha Doe testified about her daughter Jane's telling her that Anthony had "stuck his penis in her butt" as she and her daughter prepared for her daughter's birthday early Friday night, November 10, 1995. Martha Doe's answers to the assistant district attorney's questions about Jane Doe's statement established that: (1) Jane had no apparent motive to lie to her mother, (2) that Jane knew the difference between telling the truth and telling a lie, and (3) that based on her experience as Jane's mother, Jane was not "prone to lying." Martha Doe also testified that when she asked her daughter why her daughter had not told her about what Anthony had done, Jane replied, "Oh, Mamma, I was too scared." Jane asked her mother not to tell her father because he would be mad at her. Martha Doe described Jane's statements as having been made spontaneously. Martha Doe added that her husband, their two children, and she were "[v]ery active" in their church. Martha Doe described her daughter as mature for an eight-year-old child. When the assistant district attorney inquired whether Martha Doe had used "any suggestive techniques or questions ... in eliciting the statement from [Jane]," Martha Doe replied, "No, she just poured her heart out."
¶ 31. Next, the State called Angela Davis, a teacher at Madison Station Elementary School, which Jane Doe attended. Ms. Davis testified that after one of her students had told her that "a man named Anthony had been touching her ... and doing some things to her ...," this same student told her that "the same person had done the same thing to [Jane Doe]." Ms. Davis then testified that Jane Doe "came to [her] classroom," and told her "that she had something to tell me but that she was scared...." After Ms. Davis's student re-assured Jane Doe that Ms. Davis "was a good person to talk to because [Ms. Davis] was nice ...," Jane Doe told Ms. Davis "that over at Ms. Carter's house where she stayed sometimes with a baby-sitter, there was a man there named Anthony and that when she would go over sometimes ... he would touch her private with his private and that he would squirt some stuff on her and that sometimes it hurt." Ms. Davis added that Jane Doe also told her that "she was scared to tell anybody because [Anthony] told her that he would do some *1018 bad things to hurt her if she ever told anybody." As had Martha Doe, Ms. Davis established that Jane Doe's statements were spontaneous without any prompting from her. She described Jane Doe as "kind of quiet, but, ... yes, she seems mature for a second graderthird grader now." Ms. Davis thought that it was "[v]ery unlikely that she made it up because when [Jane] talked to me, she seemed to be very fearful about the police." According to Ms. Davis, Jane "kept saying, `[i]f I talk to anybody, are the police going to get me?'"
¶ 32. After Jackson's counsel cross-examined Ms. Davis, the trial court found "that there was a substantial indicia of reliability for each separate statement to each separate witness and that [Martha Doe and Ms. Davis] would be allowed to testify under Rule 803(25)." In his brief, Jackson contends:
So for two reasons, the conviction in this case should be reversed under this issue: First, the State failed to offer sufficient evidence of reliability as to the time of the offense reported by the hearsay evidence as inquired by [Rule] 803(25); and, separately, the court abused its discretion failing to adequately state the basis of the finding of sufficient indicia of reliability.
With regard to Jackson's first reason, that "the State failed to offer sufficient evidence of reliability as to the time of the offense reported by the hearsay evidence," the record reflects that Jackson's counsel never objected to Martha Doe or Ms. Davis's testimony about what Jane Doe had told either of them because their testimony was not sufficiently time-specific. Thus, Jackson waves his right to present this aspect of his argument. See Touart v. Johnston, 656 So.2d 318, 321 (Miss.1995) (reciting that an appellant is not entitled to raise new issues on appeal since to do so denies the trial court the opportunity to address the matter). Nevertheless, Martha Doe specifically testified that her daughter told her on November 10, 1995, about what "Anthony" had done, and Ms. Davis testified that Jane Doe told her on November 17, 1995, about "Anthony." The comment to Rule 803(25) specifically provides that "the timing of the declarations" is one of twelve factors "that the court should examine to determine if there is sufficient indicia of reliability." M.R.E. 803(25) cmt. While Jane Doe's narration to both her mother and Ms. Davis was not specific about when Anthony did what he did, both Martha Doe and Ms. Davis were quite specific about "the timing of [Jane Doe's] declarations." Their specifically testifying about the dates when Jane Doe told them about what "Anthony" had done to her combined with Jackson's counsel's failure to object to their hearsay testimony based on Jane Doe's failure to say when Anthony molested her produce no error with which to charge the trial court.
¶ 33. Jackson's second reason, "[T]he court abused its discretion failing to adequately state the basis of the finding of sufficient indicia of reliability," requires further review. At issue in Riddle v. State, 580 So.2d 1195, 1198 (Miss.1991), was the admissibility of the appellant's confession to a law enforcement officer that he had burglarized a particular home. The supreme court commented:
What makes the point worrisome is that the Circuit Court has given us no findings of fact, evidentiary or ultimate variety. At the end of the suppression hearing, the Court merely said, "Motion to suppress will be overruled," and that is all. We have repeatedly explained how this form of ruling places this Court "in an awkward position." It is difficult to review findings of fact when none have been made. This is particularly so in light of our charge to assure that the Court below employed the correct legal standard en route to ruling.
Riddle, 580 So.2d at 1200. (citations omitted). However, the supreme court continued, "Where findings of fact are fairly implicit in a trial court's ruling, we will credit those and grant them deference." *1019 Id. (citations omitted). There are limits, "legal and logical," to this concept. Id. As the supreme court then observed: "We may not credit unspoken findings not fairly inferable from the trial court's action. We do not make up findings just to save a conviction." Id. (citations omitted).
¶ 34. Perhaps more illustrative of the manner in which we elect to deal with Jackson's second reason is Eakes v. State, 665 So.2d 852, 857 (Miss.1995), in which the appellant appealed from his convictions of sexual battery and attempted sexual battery. As Rule 803(25)(a) required, the trial judge "conducted a hearing outside the presence of the jury ... and quoted the requirements of the Rule." Id. at 865. The trial judge determined "that the requisite reliability [of the hearsay testimony of Linda Palmer, a social worker about what the victims of the appellant had told her] existed." Id.
¶ 35. As the trial judge in the case sub judice failed to do, "[t]he trial judge, however, made no mention of the Wright factors in his determination that the children's statements were inherently reliable." Eakes, 665 So.2d at 866. Nevertheless, the supreme court concluded, "On the whole, there is sufficient support in the record for a finding of reliability." Id. Thus, the supreme court held that "the trial judge did not err in allowing Palmer [the social worker] to testify regarding the children's allegations against Eakes." Id.
¶ 36. Our previously related synopsis of Martha Doe's testimony which the State adduced during the pre-trial evidentiary hearing conducted by the judge as required by Rule 803(25) demonstrates that portions of her testimony related to the following ten of twelve factors which the comment to Rule 803(25) identify as "[s]ome factors that the court should examine to determine if there is sufficient indicia of reliability": "(1) whether there is an apparent motive on declarant's part to lie; (2) the general character of the declarant; (3) whether more than one person heard the statements; (4) whether the statements were made spontaneously; (5) the timing of the declarations [Friday evening, November 10, 1995]; (6) the relationship between the declarant [Jane Doe, daughter] and the witness [Martha Doe, mother]; ... (8) certainty that the statements were made; ... (10) the age or maturity of the declarant [Jane Doe]; (11) whether suggestive techniques were used in eliciting the statement; and (12) whether the declarant's age, knowledge, and experience ma[d]e it unlikely that the declarant [Jane Doe] fabricated." M.R.E. 803(25) cmt.
¶ 37. Our previously related synopsis of Angela Davis's testimony which the State adduced during this same pre-trial evidentiary hearing demonstrates that portions of her testimony related to the following ten of twelve factors identified by Rule 803(25) as "[s]ome factors that the court should examine to determine if there is sufficient indicia of reliability": "(1) whether there is an apparent motive on declarant's part to lie; (2) the general character of the declarant; (3) whether more than one person heard the statements; (4) whether the statements were made spontaneously; (5) the timing of the declarations [November 17, 1995]; (6) the relationship between the declarant [Jane Doe, student] and the witness [teacher]; ... (8) certainty that the statements were made; ... (10) the age or maturity of the declarant [Jane Doe]; (11) whether suggestive techniques were used in eliciting the statement; and (12) whether the declarant's age, knowledge, and experience ma[d]e it unlikely that the declarant [Jane Doe] fabricated." M.R.E. 803(25) cmt.
¶ 38. This Court concludes as did the Mississippi Supreme Court in Eakes that "[o]n the whole, there is sufficient support in the record [of the case sub judice] for a finding of reliability.... Consequently, the trial judge did not err in allowing [Martha Doe and Angela Davis] to testify regarding [Jane Doe's] allegations against [Anthony Jackson]." Eakes, 665 So.2d at *1020 866. Thus, this Court rejects Jackson's second reason which he offers in support of his third issue and affirms the trial judge's finding "that there was a substantial indicia of reliability for each separate statement to each separate witness and that they [Martha Doe and Angela Davis] would be allowed to testify under Rule 803(25)."

III. CONCLUSION
¶ 39. All four of Jackson's issues are matters of evidence. Rule 103(a) of the Mississippi Rules of evidence, quoted on page 7 of this opinion, is fundamentally dispositive of three of those four issues because Jackson identifies no "substantial right" affected by the trial court's admitting the evidence about which he complains in those three issues. Thus, Rule 103(a) does not allow this court to predicate error "upon a ruling which admits or excludes evidence...." M.R.E. 103(a). Jackson's remaining issue attacks the jury's verdict with the argument that the State's evidence failed to establish that he sexually abused Jane Doe between January 1 and May 31, 1995, the period of time charged in the indictment. Jackson further asserted that the State's evidence also failed to establish that any alleged act of sexual abuse of Jane Doe occurred after he became eighteen-years-old on July 7, 1994, as required by Section 97-5-23 of the Mississippi Code. However, our analysis of the State's evidence led us to the conclusion that the State's evidence was sufficient. We therefore affirm the trial court's final judgment of conviction and it's order of sentence.
¶ 40. THE CIRCUIT COURT OF MADISON COUNTY'S FINAL JUDGMENT OF APPELLANT'S CONVICTION OF GRATIFICATION OF LUST AND ITS SENTENCE OF APPELLANT TO SERVE A TERM OF TEN YEARS IN THE CUSTODY OF THE MISSISSIPPI DEPARTMENT OF CORRECTIONS ARE AFFIRMED. ALL COSTS OF THIS APPEAL ARE ASSESSED TO THE APPELLANT.
McMILLIN, C.J., KING AND SOUTHWICK, P.JJ., BRIDGES, DIAZ, IRVING, LEE, PAYNE, AND THOMAS, JJ., CONCUR.
NOTES
[1] As of the dates between which the indictment charged Jackson with this crime January 1, 1995, and May 31, 1995, Section 97-5-23 defined this crime as follows:

Any person above the age of eighteen (18) years, who, for the purpose of gratifying his or her lust, or indulging his or her depraved licentious sexual desires, shall handle, touch or rub with hands or any part of his or her body or any member thereof, any child under the age of fourteen (14) years, with or without the child's consent, shall be guilty of a high crime and, upon conviction thereof, shall be fined in a sum not less than One Hundred Dollars ($100.00) nor more than One Thousand Dollars ($1,000.00), or be committed to the custody of the State Department of Corrections not less than one (1) year nor more than ten (10) years, or be punished by both such fine and imprisonment, at the discretion of the court.
Miss.Code Ann. § 97-5-23 (Rev.1994).
[2] Jane and Martha Doe are fictitious names which we have adopted to protect the child's identity.
[3] Rule 803(25) provides:

The following are not excluded by the hearsay rule, even though the declarant is available as a witness:
(25) Tender Years Exception. A statement made by a child of tender years describing any act of sexual contact performed with or on the child by another is admissible in evidence if: (a) the court finds, in a hearing conducted outside the presence of the jury, that the time, content, and circumstances of the statement provide substantial indicia of reliability; and (b) the child either (1) testifies at the proceedings; or (2) is unavailable as a witness: provided, that when the child is unavailable as a witness, such statement may be admitted only if there is corroborative evidence of the act.
M.R.E. 803(25).