[EDITORS' NOTE: THIS PAGE CONTAINS HEADNOTES. HEADNOTES ARE NOT AN OFFICIAL PRODUCT OF THE COURT, THEREFORE THEY ARE NOT DISPLAYED.] *Page 849 
¶ 1. On January 28, 2004, Richard Hobgood was convicted in the Hinds County Circuit Court, First Judicial District, of *Page 850 
sexual battery of a child under the age of 14, pursuant to Miss. Code Ann. Section 97-3-95(1)(d). He was sentenced to life in the custody of the Mississippi Department of Corrections, pursuant to Miss. Code Ann. Section 97-3-101(3). Hobgood asserts the trial court erred by: (1) ruling the victim was unavailable pursuant to Miss. R. Evid. 804; (2) allowing hearsay evidence under the tender years exception; (3) allowing the State to bolster its case with double hearsay; (4) allowing the State's expert witness to vouch for the victim's credibility; (5) allowing expert opinion testimony on child sexual abuse; (6) precluding Hobgood from presenting evidence in defense of his charges based on relevancy; and (7) sentencing Hobgood to life, without a hearing, an opportunity to present mitigating evidence, or considering other penalties. Finding no reversible error, we affirm the trial court.
 FACTS ¶ 2. From June 1, 2000, until June 27, 2001, Hobgood, then age 28, was living with his girlfriend in Jackson. Due to his girlfriend's emotional problems and difficulties with Hobgood, her two minor children lived with their maternal grandmother, Jane Doe.[1] However, for a period of time, their mother regained custody, and the two children lived with her and Hobgood.
 ¶ 3. On June 28, 2001, Christina Cooke was baby-sitting the victim and his sister while staying at Doe's home. The victim, who was 5 years of age at that time, approached Cooke and asked if he could tell her a secret. He then proceeded to describe to Cooke how Hobgood forced him to lie on the bed and performed anal sex on him, something which the victim called "bad medicine." Cooke then called Doe and informed her that she needed to return home. When Doe arrived, Cooke asked the victim to tell Doe what he had told her, and he repeated the story "word-for-word."
 ¶ 4. Doe and Cooke took the victim to see psychotherapist Denise Detotto. Detotto spoke individually with each of them about the victim's allegations and then directly questioned the victim. When asked, the victim told Detotto that:
 Ricky Hobgood had been giving him bad medicine. When I asked what he meant by that he said that Mr. Hobgood would have him pull his pants down and he would put his thing in his bootie, that there would be water and that Mr. Hobgood would then wipe off the water with a towel.
Detotto testified that the victim told her it happened frequently and that it was painful. She also testified that the victim was told to do "bad medicine" to his younger sister.
 ¶ 5. Following the meeting with Detotto, the victim was taken to the University of Mississippi Medical Center where he met with Dr. Gowdagere Srinath, a pediatrician. The victim gave a vivid description of the abuse to Srinath, which included a demonstration of a humping movement. Dr. Srinath testified that his physical examination of the victim revealed decreased anal tone, which was consistent with the description of abuse the victim had given him. While at UMMC, the victim also met with Jackson Police Department Officer Jay Albright, and described what Hobgood had done. Albright also questioned Doe and a social worker with whom the victim had met. *Page 851 
 ANALYSIS I. VICTIM'S UNAVAILABILITY TO TESTIFY UNDER MISS. R. EVID. 804(a)(6)
 ¶ 6. On January 26, 2004, the court held a pre-trial hearing on the State's motion to have the victim declared unavailable so his testimony could be admitted under the tender years exception. The State called Detotto to testify, and established that she has a master's degree in psychology with a specialization in clinical mental health, and attended a four-year doctoral program at the Massachusetts School of Professional Psychology. During the first and second years she took part in clinical programs and was assigned to the children's assessment team at the University of Massachusetts Medical Center in Worcester, Massachusetts. After eliciting her significant credentials, the state began questioning Detotto regarding her examination of the victim. The record does not reveal that the State moved to qualify her as an expert, but neither does the record reveal that Hobgood objected to her testimony.
 ¶ 7. Detotto further testified that the victim attended therapy sessions with her for slightly more than one year. In her opinion, the victim would be re-traumatized, "like taking a scar [sic] off a wound", if forced to testify in front of Hobgood since he had not seen him in two years. The trial court found, pursuant to Miss. R. Evid. 804(a)(6), there was substantial likelihood the victim's emotional or psychological health would be substantially impaired if he were required to testify in the physical presence of the accused, and therefore declared him to be unavailable.
 ¶ 8. Hobgood now contends the trial court erred in this determination, because its decision was based on an expert opinion that was not properly elicited pursuant to Miss. R. Evid. 702.[2] However, Hobgood failed to object to Detotto's testimony in the hearing, and thus is procedurally barred from raising this issue on appeal. See Robinson v. State,585 So.2d 735, 737 (Miss. 1991). Notwithstanding the procedural bar, Hobgood's argument is also without merit.
 ¶ 9. Although this Court has not specifically addressed the standard to be applied when qualifying a witness as an expert in child abuse cases, it is clear from the record that the trial court found Detotto qualified to deliver expert testimony. However, this is not what Hobgood challenges.
 ¶ 10. Hobgood challenges the State's failure to use the magic words of "tendering" Detotto as an expert witness during the pretrial hearing.[3] To find in favor of Hobgood would put form over substance so as to cause a miscarriage of justice. The State and the trial court complied with Rule 702, in eliciting Detotto's qualifications in open court. Hobgood was put on notice of her qualifications, credentials and the nature of her testimony. Hobgood had ample opportunity to challenge these qualifications but chose not to do so. We find Hobgood's argument without merit.
II. THE TENDER YEARS EXCEPTION UNDER MISS. R. EVID. 803(25)
 ¶ 11. The trial court admitted the victim's statements regarding Hobgood's *Page 852 
"bad medicine", under Miss. R. Evid. 803(25), the tender years exception. These statements and a description of the abuse were testified to by: Doe, Cooke, Detotto, Albright, Srinath and Detective Carnell Kitchens. Hobgood asserts their testimony violated his right to confront the witnesses against him under the Sixth and Fourteenth Amendments to the United States Constitution and Article 3 Section 26 of the Mississippi Constitution, citing Crawford v. Washington, 541 U.S. 36,124 S.Ct. 1354, 158 L.Ed.2d 177 (2004). However, Hobgood failed to contemporaneously object to this testimony, but because Hobgood raises an issue implicating his fundamental rights, it is not procedurally barred. This Court reviews the admission or exclusion of evidence for abuse of discretion. Clark v. State,891 So.2d 136, 139 (Miss. 2004) (citing Herring v. Poirrier,797 So.2d 797, 804 (Miss. 2000)).
 ¶ 12. Crawford only applies to the use of testimonial statements, and unfortunately the United States Supreme Court left "for another day any effort to spell out a comprehensive definition of `testimonial'". Crawford, 541 U.S. at 68,124 S.Ct. 1354. In this Court's recent decisions in Clark,891 So.2d at 140 and Burchfield v. State, 892 So.2d 191, 202 (Miss. 2004), we concluded that a statement is testimonial when it is given to the police or individuals working in connection with the police for the purpose of prosecuting the accused. That is clearly not the circumstance in the present case. Thus, the trial court did not err in admitting the testimony of Doe, Cooke, Detotto or Srinath, as the victim's statements related by them were not testimonial under Crawford.
 ¶ 13. These individuals were not working in connection with the police. Further, their statements were not made for the purpose of aiding in the prosecution. There was a previous relationship between the victim and Doe and Cooke. The victim's unsolicited statements were made to them for the sake of his well-being and not for the purpose of furthering the prosecution. The same can be said of statements to Detotto and Srinath. While no previous relationship existed, the purpose of these statements was to seek medical and psychological treatment. The victim was taken to Detotto and Srinath at the family's request and not sent there by police to further their investigation. Had the police directed the victim to seek treatment from a doctor and a therapist for the purpose of discovering evidence to aid in the investigation then it might be possible for the statements to implicate the Confrontation Clause.
 ¶ 14. The statements testified to by Albright and Kitchens were testimonial and should have been excluded. Therefore, the trial court erred in admitting them. However, similar testimony was properly admitted from four other witnesses. Therefore, this testimony was duplicative, and the error is harmless.
III. HEARSAY WITHIN HEARSAY
 ¶ 15. When Albright arrived at UMMC, he met with DHS personnel, a social worker and Doe. When called at trial, the State questioned him regarding his conversations with Doe and the social worker. Albright testified, over objection, to the details of the abuse related by Doe and the social worker. The trial judge overruled Hobgood's objection "based on the exception to the hearsay rule for the child of tender years. And also it's the official investigation report of this officer." Hobgood asserts the trial court erred by allowing "double hearsay" to improperly bolster other witnesses' testimony.
 ¶ 16. This is not hearsay within hearsay, and Albright's testimony does not improperly bolster the testimony of the *Page 853 
State's other witnesses. This Court's standard of review for the admission of evidence is abuse of discretion. Clark,891 So.2d at 139. Therefore, unless that discretion is abused this Court should not overturn the trial court's ruling. Id. A statement is inadmissible hearsay if it is made for the truth of the matter asserted, and typically a witness' statement to the police is hearsay. Swindle v. State, 502 So.2d 652, 657 (Miss. 1987). However, to be deemed hearsay, the purpose of the testimony must be for the truth of the matter asserted. Id. at 658. In this case the trial court did not abuse its discretion in finding the social worker's and Doe's statements were not admitted for their substantive truth, but to show why Albright's report indicated Hobgood as a suspect.
 ¶ 17. Further, Albright's testimony did not improperly bolster the testimony of other witnesses. Hobgood points to Anderson v.State, 171 Miss. 41, 156 So. 645 (1934), for the proposition that this Court condemns the practice of bolstering a witness' testimony using hearsay. This case is irrelevant and factually distinguishable. Anderson involves an out-of-court identification by the victim of his armed assailant, when the police brought the defendant to the victim's hospital room for identification. At trial the police testified as to the identification. The facts of this case are dissimilar to the facts of Anderson. We find Hobgood's argument regarding hearsay within hearsay is without merit.
IV. EXPERT VOUCHING FOR THE CREDIBILITY OF THE VICTIM
 ¶ 18. Hobgood asserts it was error to allow Dettoto to make a direct comment on a child sex abuse victim's credibility. At trial Detotto's testimony was as follows:
 Q. Okay. And during the disclosure that [the victim] made to you, did you find him credible?
A. Yes.
Q. Why?
A. Every time that —
 BY MR. WADE: Your honor, I will object to her passing on the credibility of this witness. I believe the Supreme Court has spoken to this.
 BY THE COURT: She's making an observation. Overruled. It's subject to cross-examination.
BY MS. PURNELL: (Continuing)
Q. Why did you find him credible?
 A. Every time that [the victim] discuss(ed) the above with me the details never changed. They were consistent over an entire year's period. And in addition to that, there was also physical evidence which was found.
The State recognizes that such testimony has been held to be "of dubious competency" but asserts that here it is admissible because Detotto vigorously pursued the victim's credibility through an extensive developmental history study and administration of several tests, one of which, "showed that the victim had `maladaptive behaviors'" encompassing cheating and lying.
 ¶ 19. This Court has never held that an expert's direct comment on a child sex abuse victim's credibility is per se reversible error, because in previous cases we reversed and remanded for several reasons including that error. However, this Court has stated that such testimony is at best of dubious competency.Griffith v. State, 584 So.2d 383, 387 (Miss. 1991). InGriffith the mother of a ten-year-old mentally disabled girl brought the child to a teacher who specialized in educating mentally disabled children. The purpose was to determine if the stories the child had *Page 854 
told her mother were true. The teacher testified that she believed the child's stories because "[the child] could not have told this story twice and almost word for word if she had not experienced it." Id. at 385. This Court found the teacher's statements inadmissible. Id. at 387. However, the case was remanded for another reason. Id. at 386. On remand, the Court cautioned the trial court against allowing direct comments as to the victim's "veracity." Id. at 387.
 ¶ 20. This Court has, however, stated that under Rule 702 "experts called to testify about behavioral characteristics that may affect an alleged victim's credibility may not give an opinion of the credibility of a particular witness." Goodson v.State, 566 So.2d 1142, 1153 (Miss. 1990). In Goodson, this Court first addressed the present issue. There a man was charged with sexual abuse of a young girl, when four years after the incident, the girl approached her family with the allegations. The family took her to see a physician. At trial, the physician testified that the victim had been telling the truth because the girl's statements were corroborated by physical evidence.Goodson, 566 So.2d at 1144. This Court again held such testimony inadmissible. Id. at 1145-46. However, and again,Goodson was reversed on other grounds.
 ¶ 21. The Court of Appeals dealt with this issue in Jackson v.State, 743 So.2d 1008 (Miss.Ct.App. 1999). In Jackson, a young girl reported being sexually abused by a neighbor. The child was taken to UMMC where she met with a therapist to describe the encounter. At trial the therapist testified that she assumed the child's statements were true unless they were disproved.Jackson, 743 So.2d at 1016. In that case the Court of Appeals held that the statement was not reversible error because it was not a direct comment on the child's veracity. Id. at 1016-17.
 ¶ 22. In the present case, Dettoto never stated that the victim was telling the truth. Rather she explained the consistency of the accounts he made to individuals, at different times, not in the presence of the others, and found them to be credible. Hobgood contends that Detotto's testimony denied the jury its role as judge of credibility. We disagree. The jury heard Dettoto's testimony along with that of five other witnesses. The trial court thoroughly and correctly instructed the jurors regarding their role as the sole judges of the credibility of the witnesses and the weight their testimony deserved. He specifically stated they "should consider each expert opinion received in evidence in this case and give it such weight as you may think it deserves."
 ¶ 23. We hold that allowing Detotto's comment regarding the victim's credibility was not error, when viewed in the totality of her testimony. She did not cross the line and say that he was telling the truth. This issue is without merit.
V. EXPERT OPINION TESTIMONY IN THE AREA OF CHILD SEXUAL ABUSE
 ¶ 24. A witness must be qualified as an expert under Miss. R. Evid. 702 if her testimony is such that the peculiar knowledge or information to be presented is not likely possessed by a layman.Crawford v. State, 754 So.2d 1211, 1215-16 (Miss. 2000);Sample v. State, 643 So.2d 524, 529 (Miss. 1994). Before testimony is offered pursuant to Rule 702, the witness must be offered as an expert. Sample, 643 So.2d at 530. If expert testimony is offered from an unqualified witness, there is reversible error. Cotton v. State, 675 So.2d 308, 312 (Miss. 1996) (citing Roberson v. State, 569 So.2d 691, 696 (Miss. 1990)). The purpose of qualifying a witness as an *Page 855 
expert, is to allow opposing counsel the opportunity to challenge the witness' credentials and qualifications prior to testimony being proffered. Sample, 643 So.2d at 530. It puts opposing counsel on notice and grants an opportunity to prepare rebuttal.Id.
 ¶ 25. At trial Detotto was qualified as an expert in the field of psychology. On direct examination, Detotto testified to her observations and opinions of the victim. The relevant testimony was as follows:
 Q. Okay. And did he have unusual behavior at any time during these therapy sessions?
A. During the therapy sessions?
Q. Uh-huh.
 A. Yes. He during one therapy session in particular became upset that he was going to have to — that the session was ending and that he was going to have to take a nap, and he started banging his head against the wall very violently. In fact, we had to almost restrain him at that point. He also when he was angry would bite himself. And then he was constantly putting his hands down inside of his pants and pulling on his penis.
 Q. Did these actions surprise you coming from a sexual assault victim?
A. No.
Q. Why not?
 A. Frequently when we are working with children who have been sexually abused we see self-harm like the head banging, the biting, because they're having difficulty dealing with their anger. We frequently see excessive masturbation. And then also there will be sleep disturbances frequently. Children will sometimes not be able to become toilet trained. And at five (the victim) was able to stay dry during the day, but at night he was having to be put into diapers.
There was no objection made by Hobgood at trial.
 ¶ 26. Hobgood argues that because this issue affects his fundamental rights, his failure to object at trial does not procedurally bar him from raising it on appeal. Hobgood asserts that the underlying error is the admission of expert testimony from a witness in a field about which they are not qualified to testify. Further, he argues that no witness may be qualified as an expert in the field of child sexual abuse. We disagree.
 ¶ 27. Hobgood failed to object at trial and therefore is procedurally barred from raising this issue here. See Watts v.State, 733 So.2d 214, 233 (Miss. 1999). Admission of such testimony does not affect the defendant's fundamental rights, and therefore Hobgood's failure to object to it at trial bars appeal.See Id. Notwithstanding the procedural bar, the trial court did not err in the admission of Detotto's expert testimony. The qualification of an expert on issues of child sexual abuse is left to the sound discretion of the trial judge. Crawford,754 So.2d at 1215, overruled on other grounds. Therefore, this Court will reverse only if it is clear that the witness is not qualified. Id. Hobgood argues that Goodson stands for the principal that a trial court may neither qualify an expert in the field of child abuse nor allow expert testimony about common characteristics of sexually abused children. This reading ofGoodson is incorrect. This Court has held that Goodson stands for the principal that experts may not testify as to a syndrome commonly associated with children who have been sexually abused, but can testify as to common characteristics of sexually abused children. Hall v. State, 611 So.2d 915, 919 (Miss. 1992). When an expert testifies as to substantive evidence of abuse via a description of behaviors seen in sexually abused *Page 856 
children, the expert is not describing a syndrome. Id. This Court has held that expert testimony about common characteristics is admissible unless its probative value is substantially outweighed by the potential for unfair prejudice or confusion of the jury. Id.
 ¶ 28. Detotto was within her area of expertise when she described the common characteristics of sexually abused children. She testified directly as to the victim's psychological condition. Detotto did not testify as to a syndrome; rather she spoke directly about the victim's behavior. The testimony was admitted as substantive evidence of Hobgood's guilt and it was not unfairly prejudicial or confusing to the jury. Therefore, we find Hobgood's argument without merit.
VI. EXCLUDING TESTIMONY OF HOBGOOD'S WITNESSES
 ¶ 29. After the close of the State's case, Hobgood made a proffer to introduce evidence from his mother and two uncles that the conditions of the victim's house were "dirty, stinky, smelly type and that with the inference to be drawn from that that [the victim] would not want to live there; therefore, would have made up stories to leave." The State objected as to relevancy. The trial court held the evidence was not relevant and that if it were relevant it was unduly prejudicial, confusing and needlessly cumulative. Further, the other witnesses would not be appropriate because they were not mentioned during voir dire, and therefore the jury was not given notice they would testify.
 ¶ 30. Hobgood argues the trial court erred in denying him the opportunity to introduce this evidence because it was crucial to his theory that the victim fabricated his story in order to continue living with his grandmother. Further, Hobgood complains the trial court committed a more serious error in failing to allow him to present these witnesses because they were not
listed during voir dire.
 ¶ 31. Hobgood's argument is without merit, and the trial court did not abuse its discretion in excluding the cumulative testimony. The trial court is afforded great deference whether to admit evidence. Foster v. State, 508 So.2d 1111, 1118 (Miss. 1987). This Court has long held that evidentiary rulings are within the trial judge's broad discretion and will only be reversed if the reviewing court perceives an abuse of that discretion. Hentz v. State, 542 So.2d 914, 917 (Miss. 1989). The primary premise for denying Hobgood's proffer was that it was cumulative. Hobgood presented the same evidence or variations on it, at least three times. Therefore, the additional testimony would have been cumulative, and the trial court was within its discretion when it denied Hobgood's proffer. See Gray v. State,799 So.2d 53, 60-62 (Miss. 2001); Gribble v. State,760 So.2d 790, 792-93 (Miss. 2000); Alexander v. State, 610 So.2d 320,335-36 (Miss. 1992).
 ¶ 32. Also, the unkempt nature of the home has no relevance to whether the sexual assault occurred. Hobgood exaggerates the severity of the trial court's decision. He claims the trial court's ruling denied him the ability to call these witnesses simply because they were not on the witness list during voir dire. It is true that the trial court did state its concern that they were not on the list at that time, but made its decision based on the evidence to be presented. The rationale for excluding the testimony was its substance and not who was testifying to it.
VII. LIFE SENTENCE
 ¶ 33. Pursuant to Miss. Code Ann. Section 97-3-101(3) the trial court sentenced Hobgood to life in the custody of the Mississippi *Page 857 
Department of Corrections. The trial judge observed that the crime committed by Hobgood was "a very despicable crime" and therefore imposed its sentence. Hobgood asserts that the procedure used by the trial court violated his due process rights because it failed to take into consideration certain factors in determining a proper sentence.
 ¶ 34. In order for an error related to improper sentencing to be preserved for appeal, there must be an objection made at trial. Cox v. State, 793 So.2d 591, 599 (Miss. 2001); Smith v.State, 530 So.2d 155, 162 (Miss. 1988); Reed v. State,536 So.2d 1336, 1339 (Miss. 1988). Because no objection was made at the time of sentencing, Hobgood is procedurally barred from raising this issue here. Cox, 793 So.2d at 599.
 ¶ 35. Notwithstanding the procedural bar, Hobgood's argument is also incorrect. Hobgood relies on Stewart v. State,372 So.2d 257 (Miss. 1979), for the premise that a trial court may not sentence a defendant to life imprisonment without a finding made by the jury. Stewart is both factually and statutorily distinguishable from the present case. In Stewart the defendant was convicted of armed robbery and sentenced pursuant to Miss. Code Ann. Section 97-3-79, which states in relevant part:
 . . . upon conviction, shall be imprisoned for life in the state penitentiary if the penalty is so fixed by the jury; and in cases where the jury fails to fix the penalty at imprisonment for life in the state penitentiary the court shall fix the penalty at imprisonment in the state penitentiary for any term not less than three (3) years.
In the present case Hobgood was sentenced for sexual battery pursuant to Miss. Code Ann. Section 97-3-101(3) which reads in relevant part:
 Every person who shall be convicted of sexual battery under Section 97-3-95(1)(d) who is eighteen (18) years of age or older shall be imprisoned for life in the State Penitentiary or such lesser term of imprisonment as the court may determine, but not less than twenty years (20).
The sexual battery statute does not contain the same limiting language as the armed robbery statute in Stewart. We agree with the Court of Appeals' holding in Ray v. State, 844 So.2d 483,486 (Miss.Ct.App. 2002) that this distinction is pivotal. Ray
distinguished between the armed robbery statute and others which do not contain language requiring a jury finding to impose a penalty of life. The Court of Appeals found the Stewart
decision inapplicable where the Legislature has not required jury involvement in the text of the statute. Id. at 486. The present statute authorizes the maximum sentence to be life in prison, but does not require the jury to arrive at that verdict. Because the trial court acted within the limits of the statute and the statute did not require a finding by the jury, this issue of appeal is without merit.
 CONCLUSION ¶ 36. We hold that Hobgood's rights were not violated when Detotto commented on the victim's credibility, and we find no merit to the other issues raised. We affirm the judgment of the trial court.
 ¶ 37. CONVICTION OF SEXUAL BATTERY OF A CHILD AND SENTENCE OFLIFE IMPRISONMENT IN THE CUSTODY OF THE MISSISSIPPI DEPARTMENT OFCORRECTIONS, AFFIRMED.
SMITH, C.J., WALLER, P.J., EASLEY, CARLSON, DICKINSON *Page 858 
AND RANDOLPH, JJ., CONCUR. GRAVES, J., DISSENTS WITH SEPARATE WRITTEN OPINION. DIAZ, J., NOT PARTICIPATING.
[1] We use a fictitious name to identify the grandmother in order to protect the victim's identity.
[2] The May 29, 2003, amendment to M.R.E. 702, which clarified the responsibilities of the court in evaluating the admissibility of expert testimony, was in effect at the time of this hearing.
[3] At trial the State did use the "magic words" and tendered Detotto to the trial court as an expert witness. The court accepted her as such, without objection from Hobgood.