LEE, P.J.,
for the Court.
FACTS AND PROCEDURAL HISTORY
¶ 1. At the end of a semi-circular drive near Carthage, Michael Adcock lived in a trailer with his son, Tyler, and daughter, Ashley. Ashley’s boyfriend of three years, Andrew Kimble, had lived with the family, but due to tensions between Kimble and Michael, Kimble moved out of the trailer on December 3, 2003. Penny Chamblee and her son, Joe, lived in a house next door to the Adcocks.
¶ 2. On the night of December 6, 2003, Ashley, Tyler, Joe, Michael and Brian Simmons were watching television together in the Adcocks’ trailer. While they were watching television, Kimble rode to the Chamblee house on his four-wheeler. Hearing Kimble’s four-wheeler, Ashley went outside to talk with him, and the couple began to argue in the Chamblees’ yard. Ashley testified that the argument, although heated, was not a physical altercation. While the couple argued outside, Michael entered and exited the trailer a number of times, cursing at Kimble and telling him to leave the premises. Ashley and Kimble began yelling at each other, *1060 and Michael exited the trailer, ran over to the couple and a fight ensued.
¶ 3. During the altercation, Simmons rushed from the trailer clutching a shotgun and became involved in the fray. Kimble stabbed Michael with a knife, necessitating forty stitches, nearly severing Michael’s ear.
¶ 4. Kimble was convicted of aggravated assault and sentenced to serve five years in the custody of the Mississippi Department of Corrections. It is from this conviction that Kimble appeals, arguing two assignments of error: (1) whether the State violated Rule 3.05 of the Uniform Rules of Circuit and County Court in a comment made during voir dire and (2) whether the trial court erred in denying the motion for a directed verdict, the request for a new peremptory instruction and the motion for a new trial or a judgment notwithstanding the verdict.
¶ 5. Finding no error, we affirm.
I. DID THE STATE VIOLATE URCCC 3.05 DURING VOIR DIRE?
¶ 6. URCCC 3.05 provides, in pertinent part, that during voir dire attorneys will not offer an opinion on the law. During voir dire, the State commented as follows:
Now, you know, when you have a trial, you are going to have conflicts in testimony, and that’s understandable. If you didn’t have conflicts in testimony, you wouldn’t have trials. A mere conflict in testimony does not establish reasonable doubt. Does everybody understand that? You are going to have somebody saying something and somebody saying something else. Can each of you tell me that what you consider is what the most credible testimony is and based on that, make your decision?
¶ 7. We first note that Kimble failed to object to these comments during voir dire. It is well-settled law that the failure to make a contemporaneous objection waives the right of raising the issue on appeal. Ballenger v. State, 667 So.2d 1242, 1259 (Miss.1995). Furthermore, our supreme court has held that “[A] voir dire examination of jurors must be discretionary with the circuit judge, and in the absence of objection we have no way of knowing the degree of influence it had, if any, on the ultimate verdict.” West v. State, 485 So.2d 681, 685 (Miss.1985). Notwithstanding Kimble’s failure to assert this error in a timely manner, we consider the merits of his argument.
¶ 8. Our supreme court reviewed similar comments in Palm v. State, 748 So.2d 135, 137 (¶¶ 7-9) (Miss.1999). During voir dire, the State commented as follows:
It happens from time to time that there may be a conflict in the evidence. State’s witnesses may testify to a certain set of circumstances, and if the Defendant chooses to call witnesses, they may. testify to something different. But, do you understand that a mere conflict in the evidence does not necessarily create a reasonable doubt? That’s why we have twelve jurors, to sit up here and listen to the case, to resolve that conflict and decide what the truth is.
The supreme court found that the statement was made with the purpose of determining if the potential jurors understood their role and how they were to evaluate the evidence. Id. at 138(¶ 9). Reiterating that the purpose of voir dire'is to select a fair and impartial jury, the Court opined, “ ‘Because the human element is always present, the process can by no means ever be perfect. Therefore, it is the trial court’s duty to ensure that although not perfect, the jury panel that is finally em *1061 paneled can render an impartial verdict. ...’ ” Id. (quoting Puckett v. State, 737 So.2d 322, 332(¶ 23) (Miss.1999)).
¶ 9. The statements sub judiee are substantially similar to the voir dire language used in Palm. Like Palm, the statements were made to ascertain if the potential jurors understood their objectives of weighing the evidence and determining the credibility of witnesses. We do not agree with Kimble’s contention that the statements violate URCCC 3.05, and we find that this argument lacks merit.
II. DID THE TRIAL COURT ERR IN DENYING KIMBLE’S MOTIONS FOR A DIRECTED VERDICT, PEREMPTORY INSTRUCTION, A NEW TRIAL OR JUDGMENT NOTWITHSTANDING THE VERDICT?
¶ 10. “The standard of review for a denial of a directed verdict, peremptory instruction and a JNOV are identical.” Hawthorne v. State, 835 So.2d 14, 21(¶ 31) (Miss.2003). A motion for a JNOV, a motion for a directed verdict and request for a peremptory instruction challenge the legal sufficiency of the evidence. McClain v. State, 625 So.2d 774, 778 (Miss.1993). A motion for a new trial challenges the weight of the evidence. Hawthorne, 835 So.2d at 22(¶ 32).
A. Was the evidence sufficient to sustain a conviction?
¶ 11. In reviewing the sufficiency of the evidence, all evidence supporting the guilty verdict is accepted as true, and the State must be given the benefit of all reasonable inferences that can be reasonably drawn from the evidence. Bell v. State, 910 So.2d 640, 646(¶ 16) (Miss.Ct. App.2005).
¶ 12. Michael testified that while Kim-ble and Ashley were fighting, he heard Kimble curse Ashley and say, “If you take two more steps, girl, I am going to cut your throat.” Michael testified that from the light of the trailer he could see that Kimble was holding a knife. When he heard Kimble threaten Ashley, Michael ran to defend her. Kimble cut Michael around the top of his ear, nearly severing it, and also cut Michael in the neck and in the back. According to Michael, he hit Kimble to prevent Kimble from cutting him again.
¶ 13. Ashley testified that during the altercation she tried to remove Kimble from the fray, and ICimble bit her finger. Ashley testified that she never saw Kimble with a knife. Tyler Adcock testified that he watched the fight from the window, and that Kimble, not his father, Michael, brandished the knife. Tyler also witnessed Kimble stab Michael in the neck and the back of the head. Officer Johnny Neeley of the Leake County Sheriffs Department testified that he questioned Kim-ble at the scene, and Kimble had the bloody knife in his front pants pocket. Kimble argues that Michael and Tyler lack credibility,- and that Ashley testified that Kimble neither threatened nor grabbed her. Kimble points out that Ashley testified that Michael hit Kimble first. Additionally, Kimble testified that he only produced the knife after Simmons hit him on the head with the shotgun.
¶ 14. It is well-settled law that the jury determines the credibility of witnesses and resolves conflicts in the evidence. Evans v. State, 725 So.2d 613, 680-81 (¶293) (Miss.1997). Taking the evidence in the light most favorable to the State, there was clearly sufficient evidence that Kimble assaulted Michael with a knife on the night of December 3. The jury was given a self-defense instruction but elected to reject it and to convict Kimble of aggravated assault, despite the conflicting testimony. *1062 We find no error here; therefore, this issue is without merit. .
B. Was the verdict against the weight of the evidence?
¶ 15. When determining whether a jury verdict is against the overwhelming weight of the evidence, this Court must accept as true the evidence which supports the verdict and will reverse only when convinced that the trial court has abused its discretion in failing to grant a new trial. Montana v. State, 822 So.2d 954, 967-68(¶ 61) (Miss.2002). This Court will only disturb a verdict on appeal when it is so. contrary to the evidence that allowing it to stand would result in an “unconscionable injustice.” Id. Kimble was in possession of the knife at the crime scene. .Tyler and Michael testified that Kimble stabbed Michael repeatedly. The evidence shows that Michael’s knife wound required forty stitches and that Kimble nearly severed Michael’s ear. The evidence supports the verdict, and we can find no abuse of discretion in failing to grant a new trial. This issue is without merit.
¶ 16. THE JUDGMENT OF THE CIRCUIT COURT OF LEAKE COUNTY OF CONVICTION OF AGGRAVATED ASSAULT AND SENTENCE OF FIVE YEARS IN THE CUSTODY OF THE MISSISSIPPI DEPARTMENT OF CORRECTIONS IS AFFIRMED. ALL COSTS OF THIS APPEAL ARE ASSESSED TO LEAKE COUNTY.
KING, C.J., MYERS, P.J., IRVING, CHANDLER, GRIFFIS, BARNES, ISHEE AND ROBERTS, JJ., CONCUR. SOUTHWICK, J.; NOT PARTICIPATING.