934 So.2d 1033 (2006)
Darrell McBRIDE, Appellant
v.
STATE of Mississippi, Appellee.
No. 2004-KA-00140-COA.
Court of Appeals of Mississippi.
July 25, 2006.
*1034 Edmund J. Phillips, Jr., attorney for appellant.
Office of the Attorney General by Scott Stuart, attorney for appellee.
EN BANC.
GRIFFIS, J., for the Court.
¶ 1. In the Circuit Court of Leake County, Darrell McBride was convicted of manslaughter and sentenced to serve eighteen years in the custody of the Mississippi Department of Corrections. On September 28, 2004, his attorney filed a brief with this Court arguing the appeal was without merit, and the attorney complied with the requirements of Turner v. State, 818 So.2d 1186, 1189(¶ 11) (Miss.2001). Pursuant to Lindsey v. State, 2003-KA-00331-SCT, ___ So.2d ___, 2005 WL 613396 (Miss. Mar. 17, 2005),[1] we ordered supplemental briefing on the trial court's denial of the motion to suppress the confession. McBride raised two different issues in his supplemental brief: (1) whether the prosecution improperly asked the jury to pledge a verdict during voir dire and (2) whether the State failed to establish venue. We find no error and affirm.

FACTS
¶ 2. Saturday, July 13, 2003, about 4:00 a.m., Latricia Wilson and McBride met up at a home in Attala County, after having both been to a nightclub in Durant. Wilson and McBride left to go to a casino in Philadelphia, Mississippi. They never made it. McBride shot Wilson in the head on or near the Lobutcha Creek Bridge, near the Leake County-Attala County line. McBride placed her body in the trunk of his car, drove northward, and left her body in Attala County.
¶ 3. Wilson's purse was discovered bordering the creek by fishermen later that day. The fishermen, who were from Attala County, contacted the Attala County Sheriff, who in turn contacted the Leake County Sheriff. Both sheriff's offices responded to the scene. Wilson's identification card was found in her purse. Blood, hair extensions and sandals were found on the bridge.
¶ 4. Sunday, July 14, Leake and Attala County officers brought McBride in for questioning. He was read his Miranda rights. He gave an oral confession, which was not recorded in any manner. The content of the confession is in dispute.
¶ 5. McBride testified that he confessed that he accidentally shot Wilson. At trial, he testified that they had just had sex in his car on the Lobutcha Creek Bridge, and were dressing, when he realized that a gun *1035 was in his trunk. McBride exited the vehicle to get rid of the gun, before they went to the casino. Wilson, still dressing, followed McBride. McBride said he shook the gun, attempting to remove its clip, and the gun discharged. Wilson was bending down to put her shoes on, when the gun went off, and the bullet struck her in the head. McBride maintained that he did not know that Wilson had been shot, and he never intended to kill Wilson. He threw the gun over the bridge, because he did not want to see it anymore. He placed her in the trunk of his car, left her body in Attala County, and promised her he was bringing someone to help her. He said he changed his mind, though, because no one would believe him.
¶ 6. However, the State's version of the confession was that McBride admitted to intentionally killing Wilson. Leake County Deputy Mark Wilcher testified that McBride told him that he lost his temper and shot Wilson. Specifically, Wilcher testified that McBride stated that Wilson had been disrespectful about the recent murder of Andre Porter, McBride's cousin, and her attitude angered him. After shooting her, he threw the gun and her purse over the bridge. He placed her in the trunk of his car and left her body in Attala County. Attala County Sheriff William Lee and Mississippi Bureau of Investigations Agent Randy Johnson also testified regarding McBride's confession. All three of the officers testified that McBride never referred to the incident as an accident.
¶ 7. McBride and his mother testified they did not find out Porter was killed until after Wilson was killed. McBride moved to have the confession suppressed on the basis that the two versions were contradictory. The judge found the confession had been voluntarily given, and allowed both sides' versions of the confession into evidence.
¶ 8. McBride was indicted for murder, but the jury found him guilty of the lesser offense of manslaughter.

ANALYSIS

I. Was venue established?
¶ 9. In his supplemental brief, McBride contends that venue was never established in Leake County. The State argues the crime was proven to occur in Leake County, and therefore venue was properly established.
¶ 10. "In criminal cases, venue is jurisdictional, must be proved, and may be raised for the first time on appeal." Hensley v. State, 912 So.2d 1083, 1086(¶ 12) (Miss.Ct.App.2005). The State bears the burden of proving venue beyond a reasonable doubt. Hill v. State, 797 So.2d 914, 916(¶ 10) (Miss.2001). Venue may be proven by direct and circumstantial evidence. Hensley, 912 So.2d at 1086(¶ 12). Where there is sufficient evidence to lead a reasonable trier of fact to conclude that part or all of the crime occurred in the county where the case is being tried, then evidence of venue is sufficient. Hill, 797 So.2d at 916(¶ 12).
¶ 11. Venue is proper in the county where the crime was committed, unless otherwise provided by law. Miss.Code Ann. § 99-11-3(1) (Supp.2005). "Where the mortal stroke or other cause of death occurs ... in one county, and the death occurs in another county, the offender may be indicted and tried in either county...." Miss.Code Ann. § 99-11-21 (Rev.2000).
¶ 12. Wilcher described the scene of the crime:
[I w]ent out to the Lobutcha Bridge on Center Crossing Road....

*1036 It's on the northern part of Leake County. It's near where the Leake and Attala County line meet. It's in the eastern side of the county near Winston County, Neshoba County....
There was also just north of the bridge a dirt driveway. There was a large pool of what appeared to be blood. It had what appeared to be brain matter and bone fragments inside the puddle of blood. There was also what appeared to be at that time hair extensions that were braided laying at the scene. There were a pair of high heeled sandals, and there was a shell casing from what appeared to be a rifle.
While Wilcher testified the bridge is in Leake County, he is ambiguous as to whether the scene of the crime was on the bridge or just north of the bridge. He is also vague as to whether just north of the bridge is in Leake or Attala County.
¶ 13. However, later, Wilcher gave testimony that the shooting did occur in Leake County. He testified about driving with McBride to where Wilson's body was hidden:
Q. Now, you are back out here in Leake County, at the scene at the bridge?
A. Yes, sir.
Q. Where you found the puddles and the things that are in these pictures. Did he indicate to you that's where the shooting occurred?
A. Yes, sir, he did.
Q. Tell us how y'all got from there to finding the body of Latricia Wilson.
A. He told us to turn around and drive back toward Kosciusko, and he told us to drive slow, and he recognized the driveway when he saw it, and immediately as we entered into Attala County, when we crossed the Leake-Attala County line entering into Attala County, he said, "Slow down. There's the driveway on your left." ...
This was sufficient evidence for a reasonable jury to conclude that the shooting occurred in Leake County. We hold venue was proper.

II. Did the trial court err in admitting the disputed confession?
¶ 14. Although we ordered supplemental briefing on the trial court's admission of the disputed confession, McBride failed to address this issue. The State did address the issue and argues that the statement was voluntary and therefore admissible.
¶ 15. Despite McBride's counsel's failure to address the issue, we will address the issue on the merits. We do this for two reasons. First, under the new procedure announced in Lindsey, 2003-KA-00331-SCT at 6, ___ So.2d at ___(¶ 18), "Once briefing is complete, the appellate court must consider the case on its merits and render a decision." Secondly, the purpose of the Lindsey procedure is to "safeguard the constitutional right to counsel which is afforded to indigent criminal defendants throughout the entirety of appellate proceedings." Id. at 6, ___ So.2d at ___(¶ 20), (citing Smith v. Robbins, 528 U.S. 259, 280, 120 S.Ct. 746, 145 L.Ed.2d 756 (2000)). ¶ 16.
¶ 16 At trial, McBride moved to suppress the police's version of his confession. He did not challenge that it was voluntarily made. Rather, he moved to suppress the confession on the grounds that it was not what he said. The police say McBride confessed that he "lost it" and shot Wilson over the derogatory statements she made about the murder of his cousin. McBride maintains that he confessed that he accidentally shot her when he was trying to shake the clip loose from the gun.
*1037 ¶ 17. We review denials of motions to suppress confessions for manifest error or for whether the decision is contrary to the overwhelming weight of the evidence. Carlisle v. State, 822 So.2d 1022, 1026(¶ 11) (Miss.Ct.App.2002). As long as the correct principles of law are applied and the finding of voluntariness is factually supported by the evidence, we will affirm. Id.
¶ 18. We addressed the admissibility of a disputed confession in Cobb v. State, 734 So.2d 182 (Miss.Ct.App.1999). James Cobb was accused of robbing a jewelry store. Id. at 184(¶ 2). Cobb moved to suppress an oral confession made after his arrest. Id. at 184(¶ 5). He did not challenge the voluntariness of the statement. Id. at 184(¶ 6). What he challenged was the content. Id. at 184-85(¶ 6). Cobb claimed that he told the police that he did not commit the robbery. Id. at 185(¶ 6). The State claimed that he admitted robbing the store. Id. at 184(¶ 5). When police typed this confession, Cobb refused to sign it. Id.
¶ 19. This Court held, "Such testimony does not constitute grounds to exclude the confession if it is contradicted by competent evidence that the statements were, in fact, made." Id. at 185(¶ 7). "Once there is credible proof that such a statement was made, evidence of the contents of the statement is admissible." Id. The defendant, however, may offer evidence to impeach the testimony of the witness claiming to have heard the statement. Id. Thus, the Court held the oral confession was admissible. Id.
¶ 20. Cobb instructs our decision in this case. The mere fact that McBride disputes the content of his confession is not reason to exclude it. Rather, we must determine if there is credible proof that the statement was, in fact, made. If so, the statement is admissible.
¶ 21. At the suppression hearing, McBride conceded that he gave the statement voluntarily. McBride, Wilcher, and Johnson testified that McBride was given Miranda warnings and understood his rights. Wilcher testified that McBride told Wilcher that McBride lost his temper, shot Wilson, threw the gun and her purse over the bridge, put her in his car trunk and left her body somewhere. Agent Johnson testified he was outside of the interrogation room. He said Wilcher and McBride came out of the room, and Wilcher told him that McBride had said "he just lost it and shot her and he would show us where the body was." Johnson asked McBride if that was true, and McBride said yes. Sheriff Lee testified, "Investigator Wilcher came out and Mr. McBride told me verbally that she had just kind ofhe said he just heard so muchthe lady had said so much about his cousin that he had just lost it, and he killed her."
¶ 22. On this record, there was credible evidence for the judge to conclude the statement was, in fact, made and that it was made voluntarily. McBride was allowed to attempt to impeach the officers' memories and to present his version of the statement. We hold the judge's decision to admit the statement was not manifest error.

III. Did the prosecution ask the jury to pledge a verdict?
¶ 23. Lastly, McBride contends that the prosecutor asked the jury to pledge a verdict based on less than reasonable doubt. The State responds that the prosecutor was merely asking the jury to vote on what they believed to be the truth.
¶ 24. McBride did not object to the examination during voir dire, nor did he object to it in a post-trial motion. The failure to make a contemporaneous objection waives this issue on appeal. Kimble *1038 v. State, 920 So.2d 1058, 1060(¶ 7) (Miss.Ct. App.2006). McBride, however, relies on plain error. He argues that the prosecutor asked the jury to pledge a guilty verdict on less than reasonable doubt. The right not to be convicted unless the State proves guilt beyond a reasonable doubt is a fundamental right. Evans v. State, 919 So.2d 231, 235(¶ 15) (Miss.Ct.App.2005). It is guaranteed by our state constitution, as well as the Due Process Clause of the federal constitution. In re Winship, 397 U.S. 358, 364, 90 S.Ct. 1068, 25 L.Ed.2d 368 (1970); Evans, 919 So.2d at 235(¶ 15). As such, its violation is noticeable as plain error. Id. Therefore, we will address the merits of this issue.
¶ 25. During voir dire, "No hypothetical questions requiring any juror to pledge a particular verdict will be asked." URCCC 3.05. The prosecutor and the defense "should not attempt to obtain a promise from each juror as to what he would do under any given circumstance. Both sides are entitled to a fair trial, but not to a previously committed group of jurors." Murphy v. State, 246 So.2d 920, 922 (Miss.1971). Where prosecutorial misconduct endangers the fairness of the trial and the impartial administration of justice, we must reverse. Acevedo v. State, 467 So.2d 220, 226 (Miss.1985).
¶ 26. During voir dire the prosecutor told the jury that the State had the burden of proving the case beyond a reasonable doubt. He said that each juror must determine for himself what reasonable doubt is. He continued:
The last thing I want to talk to you about is this, and I have already referred to it. What we want you to do or any juror to do, and all I ever ask a juror to do is to give me a fair verdict and decide the case on what you hear in the Courtroom that comes from that witness stand over there, and then just simply decide the case on what you believe to be the truth, and then like the Judge said a minute ago, let the chips fall where they may. You know, if he's guilty, vote to find him guilty. If you honestly believe the State hasn't met its burden of proof and the Defendant is not guilty, then by all means you should vote not guilty. I may disagree with you about it, but if that's the way you truly feel, that's what I want you to do. What I really want you to do is for you to feel that the State has met its burden of proof. I've been a prosecutor this is my seventeenth year now. I've tried a lot of cases, a lot of guilty verdicts, not guilty verdicts, and the ones that have been not guilty, I might not agree with them, but as long as a person tells me that was their honest belief, that's fine with me.
But I have also had people come to me after cases and say, "Well, Mr. Duncan, I thought the Defendant was guilty, but I voted not guilty for some other reason." They felt sorry for his mama, the family, or something like that. That's what we don't want. So, does everybody tell me if you are sitting on this case or any other one, that you will decide the case on what you believe the truth to be and not anything else? Can you do that?
The last paragraph is the portion McBride takes issue with on appeal. First, we note that the prosecutor did not present a hypothetical set of facts. Therefore, he cannot be said to have asked the jury to pledge a verdict on a hypothetical.
¶ 27. Secondly, we address whether the prosecutor asked the jury to hold the State to a lesser burden of proof. Taking the last paragraph by itself, it appears the prosecutor is asking the jury to pledge a verdict based on what they believe, as opposed to what the State proved beyond a *1039 reasonable doubt. However, when read in context with the prosecutor's examination, we find this is not the case. The prosecutor explained the State's burden of proof was beyond a reasonable doubt. He then set about to make sure that the jury would vote based on whether or not they believed the State met that standard of proof. He was also trying to determine that the jury would not base its verdict on sympathy. Sympathy is not a proper basis for a verdict. Forbes v. State, 771 So.2d 942, 949(¶ 18) (Miss.Ct.App.2000). We hold the prosecutor did not ask the jury to pledge a verdict based on less than reasonable doubt.

CONCLUSION
¶ 28. We affirm McBride's conviction. Leake County had jurisdiction. The trial court's decision to admit the confession was not manifestly wrong. The prosecutor did not engage in misconduct during voir dire.
¶ 29. THE JUDGMENT OF THE CIRCUIT COURT OF LEAKE COUNTY OF CONVICTION OF MANSLAUGHTER AND SENTENCE TO SERVE A TERM OF EIGHTEEN YEARS IN THE CUSTODY OF MISSISSIPPI DEPARTMENT OF CORRECTIONS IS AFFIRMED. ALL COSTS OF THIS APPEAL ARE ASSESSED TO LEAKE COUNTY.
KING, C.J., LEE AND MYERS, P.JJ., SOUTHWICK, IRVING, CHANDLER, BARNES, ISHEE AND ROBERTS, JJ., CONCUR.
NOTES
[1] The procedure in Turner had since been replaced by the new procedure announced in Lindsey.