MYERS, P.J.,
 

 for the Court:
 

 ¶ 1. Tommy Junior McCrory was tried and convicted in the Circuit Court of Rankin County on two counts of sexual battery. The trial court sentenced McCrory on each count to thirty-five years in the custody of the Mississippi Department of Corrections, with thirty years to serve and five years’ post-release supervision. The sentences were ordered to be served concurrently, and McCrory was required to register as a sex offender. Aggrieved by his convictions and sentences, McCrory appeals, arguing error in five issues. Because we find no reversible error, we affirm.
 

 FACTS
 

 ¶ 2. On May 7, 2007, McCrory was indicted on two counts of sexual battery. The indictment alleged that between November 18, 2005, and January 8, 2007, McCrory had digitally penetrated his male stepchildren A.B. and B.B.
 
 [1]
 
 in violation of Mississippi Code Annotated section 97-3-95 (Rev.2006). At the time of the indictment, the children were eleven and eight years of age, respectively.
 

 ¶ 3. The allegations first came to light in November 2006, when A.B. visited with Robert Brown, his father. Brown testified that A.B.’s mother had asked him to speak with the child regarding problems at home and at school. Brown took A.B. to a Wendy’s restaurant, where he expected to discuss AB.’s continuing bowel incontinence. When Brown questioned A.B. about his “problems,” the child instead volunteered that he had been abused. A.B. stated that McCrory, who had recently married his mother, would “check his oil” by holding A.B. down and forcing a finger into his rectum. A.B. stated that McCrory had done this to him many times. A.B. also stated he had previously revealed the abuse to his mother and maternal grandmother, but his grandmother had dismissed it as a “joke,” and his mother had told him that she needed McCrory’s income to pay the bills.
 

 ¶ 4. A.B. “begged” his father not to call the police, stating that he feared he would “get in trouble” and that his mother would be arrested. Nonetheless, Brown reported the alleged abuse to the Mississippi Department of Human Services that evening. After an emergency hearing in the Rankin County Youth Court, A.B. and B.B. were placed in Brown’s custody. B.B., although born to Brown and his mother’s marriage, was not Brown’s natural child. Some time after being placed in Brown’s custody, B.B. told Brown that he had also been molested by McCrory. B.B.’s description of the abuse was similar to that offered by A.B. Approximately five months before the trial, B.B. was placed in the custody of his maternal grandmother.
 

 ¶ 5. At trial, A.B., B.B., and Brown testified for the State. The State also called Detective James Thompson of the Pearl Police Department, who investigated the allegations and had interviewed McCrory. Brian Ervin, a forensic interviewer with the Children’s Advocacy Center (CAC) in Brandon, Mississippi, and Katherine Ko-lar, a sexual assault nurse, also testified for the State.
 

 
 *198
 
 ¶ 6. The defense called several witness who testified that “checking the oil” referred to a joke and had no sexual connotation as McCrory used it. The children’s mother and grandmother denied any prior knowledge of the allegations, and they also averred that McCrory had had no opportunity to abuse the children because the children lived primarily with their grandmother, rather than with McCrory and their mother.
 

 ¶ 7. After a three-day trial, the jury returned guilty verdicts on both counts.
 

 DISCUSSION
 

 1. Sufficiency of the Evidence; Venue
 

 ¶ 8. In his first issue, McCrory argues that the State failed to prove venue and, therefore, jurisdiction over the second count, pertaining to the sexual battery of B.B.
 

 ¶ 9. Mississippi Code Annotated section 99-11-3(1) (Rev.2007) states in pertinent part:
 

 The local jurisdiction of all offenses, unless otherwise provided by law, shall be in the county where committed. But, if on the trial the evidence makes it doubtful in which of several counties, including that in which the indictment or affidavit alleges the offense was committed, such doubt shall not avail to procure the acquittal of the defendant.
 

 We have held:
 

 “In criminal cases, venue is jurisdictional, must be proved, and may be raised for the first time on appeal.”
 
 Hensley v. State,
 
 912 So.2d 1083, 1086 (¶ 12) (Miss.Ct.App.2005). The State bears the burden of proving venue beyond a reasonable doubt.
 
 Hill v. State,
 
 797 So.2d 914, 916 (¶ 10) (Miss.2001). Venue may be proven by direct and circumstantial evidence.
 
 Hensley,
 
 912 So.2d at 1086 (¶ 12). Where there is sufficient evidence to lead a reasonable trier of fact to conclude that part or all of the crime occurred in the county where the case is being tried, then evidence of venue is sufficient.
 
 Hill,
 
 797 So.2d at 916 (¶ 12).
 

 McBride v. State,
 
 934 So.2d 1033, 1035 (¶ 10) (Miss.Ct.App.2006).
 

 ¶ 10. McCrory argues that B.B., who was nine years of age at the time of the trial, was never asked on direct examination where the assaults took place.
 
 [2]
 
 On cross-examination, the defense twice asked B.B. where the abuse had occurred, but B.B. stated that he could not remember. The State concedes that B.B. never explicitly stated that the acts occurred in Rankin County, but it argues that this fact was established through other evidence. We agree.
 

 ¶ 11. B.B. testified that during the time McCrory abused him, he lived with his grandmother or with his mother and McCrory. Testimony from various witnesses at trial unanimously indicated that the grandmother’s home was located in Richland, Mississippi, and that during the relevant time period B.B.’s mother and McCrory lived first in an apartment and then in a house, both located in Pearl, Mississippi. Witnesses expressly testified during the trial that both Richland and Pearl are located in Rankin County.
 

 ¶ 12. B.B. stated that when the abuse began, he was living with his grandmother, but he would regularly visit with his mother and McCrory. The abuse during this time had occurred “most of the days,” and B.B.’s older half-brother, A.B., was present and witnessed the abuse on some occasions. In his testimony, A.B. was more specific, stating that he was abused “on a
 
 *199
 
 daily basis” “at the house or any place where [McCrory] was and I was too.” A.B. also testified that “[m]ost of the time [the abuse occurred] where they were living, at the apartments on Malbury Street.”
 
 [3]
 

 ¶ IB. Although we acknowledge that B.B. did not expressly state where the abuse occurred, we find the testimony described above sufficient to establish venue in Rankin County by circumstantial evidence. This issue is without merit.
 

 2. In-Court Identification
 

 ¶ 14. In his second issue on appeal, McCrory argues that his conviction as to Count II must be reversed because B.B. failed to identify him in the courtroom on the day of trial, when asked to do so on direct examination.
 

 ¶ 15. At the outset, we find this issue procedurally barred because McCro-ry has failed to cite any relevant authority in support of this issue on appeal.
 
 Turner v. State,
 
 721 So.2d 642, 648 (¶ 20) (Miss.1998).
 

 ¶ 16. Notwithstanding the procedural bar, this issue is plainly without merit. B.B. testified that he had been abused by “Tommy,” who had been married to B.B.’s mother and was the father of B.B.’s two-year-old half-brother. McCrory’s given name is, of course, Tommy, and other witnesses identified McCrory as the man who had married B.B.’s mother and as the father of B.B.’s young half-brother. Furthermore, we note that B.B. was eight years of age at the time of the trial and testified that he had not seen “Tommy” for more than a year. Another witness for the State noted that McCrory had altered his appearance prior to the trial by changing his “hair style.” McCrory was sufficiently identified as the individual who had assaulted B.B. This issue is without merit.
 

 3. Testimony Regarding the Victims’ Credibility
 

 ¶ 17. In his third issue on appeal, McCrory argues that the trial court erred in allowing Brian Ervin, offered by the State as an expert in forensic interviewing, to testify regarding the “credibility and veracity” of A.B. and B.B. Ervin had conducted forensic interviews of the children approximately two months after the allegations of abuse came to light.
 

 ¶ 18. We note that McCrory offered no contemporaneous objection on these grounds to any of the testimony he now asserts was erroneously allowed at trial. This issue is therefore procedurally barred on appeal.
 
 Watts v. State,
 
 733 So.2d 214, 233 (¶ 53) (Miss.1999).
 

 ¶ 19. Notwithstanding the procedural bar, we find this issue is without merit. In
 
 Hobgood v. State,
 
 926 So.2d 847, 853-54 (¶¶ 18-23) (Miss.2006), the supreme court distinguished between expert testimony regarding the “credibility” of children alleging sexual abuse and opinions regarding the “veracity” of such allegations. The former, although “of dubious competency,” may be admissible; the latter cannot.
 
 Id.
 
 At the heart of this issue is whether the witness “cross[es] the line and say[s] that [the victim] was telling the truth.”
 
 Id.
 
 at 854 (¶ 23).
 

 ¶20. In the instant case, Ervin never testified as to the veracity of either of the victims’ statements. In fact, although he was asked by the State on direct examination whether he found each victim “credible,” Ervin responded only by detailing certain observations that in his
 
 *200
 
 opinion “added credibility” to each boy’s account. After reviewing Ervin’s testimony in its entirety, we find no error in the admission of his comments regarding the victims’ credibility.
 
 Id.
 
 We note also that the jury was able to observe both A.B. and B.B. when they testified at trial and that the jury was properly instructed that it alone was the final arbiter of credibility.
 
 Branch v. State,
 
 998 So.2d 411, 416 (¶ 17) (Miss.2008);
 
 Hobgood,
 
 926 So.2d at 854 (¶ 22). This issue is without merit.
 

 4. Hearsay; Detective Thompson
 

 ¶ 21. In his fourth issue on appeal, McCrory argues that the trial court erred in admitting certain hearsay testimony offered by Detective Thompson, the principal investigator in the case. The trial court permitted Detective Thompson, over MeCrory’s objection, to relate both sides of an exchange between himself and the victims’ mother that occurred at the first CAC interview.
 

 ¶ 22. The victims attended two CAC interviews. The first was held in Jackson, Mississippi, where the children made no disclosure of abuse.
 
 [4]
 
 In this line of questioning, the prosecutor was attempting to explain why the victims did not disclose the abuse during the first interview. Detective Thompson testified on direct examination by the State as follows:
 

 Q. Tell the jury what happened at that CAC interview[.]
 

 A. You want me to tell what led up to that and then what happened there?
 

 Q. Let’s advise the jury of what led up to that meeting from Youth Court that /all were required to go to CAC for an interview, who all went, and just talk us through that day’s events[.]
 

 A. As an adult and as a police officer, my job is to protect kids. Well, during that hearing at Youth Court, the mother had made a comment in open court that it was just a game.
 

 [DEFENSE COUNSEL]: Your Honor, I object to hearsay.
 

 [THE STATE]: It’s not being offered for the truth of the matter.
 

 [THE COURT]: Overruled. It’s not offered for the truth of the matter. You may answer.
 

 A. That this was just a game and it was something that had been passed on from generation to generation, and that bothered me. Then I also learned that the kids were told not to tell because mom didn’t want Tommy to go to jail because he was the provider in the household. So we leave Youth Court. Naturally as a human being and as a father, I was fuming. So I drove to Jackson and got to CAC. When I got there, I got the mother to come outside on the sidewalk there and I let her have it. Whether that be [sic] right or wrong, the kids overheard me and seen [sic] me, and I guess they were upset that not only was the provider in the household in trouble, but now mom is in trouble because of things she’d said. So they didn’t disclose [the abuse] at CAC that day because of me.
 

 ¶ 23. On appeal, McCrory argues that this testimony was inadmissible hearsay and that its admission amounted to reversible error. Our analysis of this issue is complicated because McCrory has failed to identify precisely what part of the testimony quoted above his argument on appeal is
 
 *201
 
 addressed to. Based on his assertion in his brief that the “record is unclear as to who exactly made the statement to the [d]etective,” we take this issue to address Detective Thompson’s testimony that: “I also learned that the kids were told not to tell because mom didn’t want Tommy to go to jail because he was the provider in the household.”
 

 ¶ 24. This issue, like the previous issue, must fail because McCrory made no contemporaneous objection at trial. Although there was an objection, it was addressed to the prior statement regarding the mother’s assertion at the youth court hearing that the alleged abuse was “just a game.” McCrory made no objection to the particular statement he now asserts amounted to reversible error. This issue is therefore procedurally barred from our review.
 
 Watts,
 
 733 So.2d at 233 (¶ 53).
 

 ¶25. Notwithstanding the procedural bar, any error in admitting this testimony was harmless. The substance of the statement — that the victims’ mother had told the children not to disclose the abuse because she feared the loss of McCrory’s income — was also established through A.B.’s direct testimony and through his father’s testimony as admissible hearsay.
 

 5. Hearsay; Tender Years Exception
 

 ¶26. In his final issue on appeal, McCrory argues that the trial court erred in admitting the hearsay testimony offered by Brown, A.B.’s father and B.B.’s stepfather, under the “tender years exception” of Rule 803(25) of the Mississippi Rules of Evidence. The trial court allowed Brown to testify as to certain statements made to him by both victims.
 

 ¶ 27. Rule 803(25) provides the following:
 

 A statement made by a child of tender years describing any act of sexual contact performed with or on the child by another is admissible in evidence if: (a) the court finds, in a hearing conducted outside the presence of the jury, that the time, content, and circumstances of the statement provided substantial indicia of reliability; and (b) the child either (1) testifies at the proceedings; or (2) is unavailable as a witness....
 

 ¶28. There is a rebuttable presumption that a child under the age of twelve is of tender years.
 
 Allred v. State,
 
 908 So.2d 889, 892 (¶ 11) (Miss.Ct.App.2005). At the time of the disclosures to Brown, both victims were under the age of twelve. On appeal, McCrory does not contest the trial court’s finding that A.B. and B.B. were of tender years, and the testimony at the Rule 803(25) hearing was unanimous that both children were of normal or below normal maturity for children of their respective ages.
 

 ¶ 29. The inquiry, however, does not end there. Once the court finds that a declarant is of tender years, it must then determine whether the child’s statements possess “substantial indicia of reliability.” M.R.E. 803(25). The comment to Rule 803(25) recites several factors, commonly called the
 
 Wright
 
 factors, that the trial court may consider:
 

 (1) whether there is an apparent motive on declarant’s part to lie; (2) the general character of the declarant; (3) whether more than one person heard the statements; (4) whether the statements were made spontaneously; (5) the timing of the declarations; (6) the relationship between the declarant and the witness; (7) the possibility of the declarant’s faulty recollection is remote; (8) certainty that the statements were made; (9) the credibility of the person testifying about the statements; (10) the age or maturity of the declarant; (11) whether suggestive techniques were used in eliciting the
 
 *202
 
 statement; and (12) whether the declar-ant’s age, knowledge, and experience make it unlikely that the declarant fabricated.
 

 See also Idaho v. Wright,
 
 497 U.S. 805, 822, 110 S.Ct. 3139, 111 L.Ed.2d 638 (1990). However, the
 
 Wright
 
 factors are not an exhaustive list, and “no mechanical test is available.”
 
 Withers v. State,
 
 907 So.2d 342, 350 (¶ 23) (Miss.2005) (quoting
 
 Eakes v. State,
 
 665 So.2d 852, 865 (Miss.1995)). Instead, “the unifying principle is that these factors relate to whether the child declarant was particularly likely to be telling the truth when the statement was made.”
 
 Bell v. State,
 
 797 So.2d 945, 948 (¶ 13) (Miss.2001) (quoting
 
 Wright,
 
 497 U.S. at 822, 110 S.Ct. 3139).
 

 ¶ 30. “The standard of review on appeal from evidentiary rulings is prescribed by Rule 103(a) of the Mississippi Rules of Evidence, which states that ‘error may not be predicated upon a ruling which admits or excludes evidence unless a substantial right of a party is affected.’ ”
 
 Withers,
 
 907 So.2d at 345 (¶ 7) (quoting M.R.E. 103(a)). Thus, we review the trial court’s ruling for an abuse of discretion, which may be found only if that decision is not supported by substantial credible evidence or where “the reviewing court has a definite and firm conviction that the court below committed a clear error of judgment and [in the] conclusion it reached upon a weighing of the relevant factors.”
 
 Id.
 
 (internal quotations omitted).
 

 ¶ 31. The trial court conducted a Rule 803(25) hearing on this issue, where it heard extensive testimony from Brown regarding the circumstances of each child’s disclosure. Prior to the hearing, both children had testified as part of the State’s case-in-chief. After concluding the hearing, the trial court acknowledged the
 
 Wright
 
 factors and found that the “time, content, and circumstances of the statements made by both of the victims provide substantial indicia of reliability.”
 

 ¶ 32. During the Rule 803(25) hearing, Brown testified that A.B. had first disclosed the abuse to him at a Wendy’s restaurant, as we have detailed above. Brown stated that B.B. had spontaneously revealed the abuse some time later, at Brown’s home in Flora, Mississippi. This occurred some time after both boys had been placed in his custody. Brown could not recall the exact date B.B. made the first disclosure, except that it was “around Christmas time” and followed the boys being informed that their mother would have limited visitation.
 

 ¶ 33. On appeal, McCrory argues that the trial court erred in concluding that the victims’ statements possessed substantial indicia of reliability. He argues that the trial court ignored or failed to properly weigh certain facts, particularly that the children had failed to disclose any abuse during the first CAC interview, which occurred shortly after A-B.’s initial disclosure.
 
 [5]
 
 At the time of the second CAC interview, when both children disclosed the abuse to Ervin, the children had been in Brown’s custody for approximately six weeks. McCrory also argues that only Brown was present during the initial disclosures of both victims and that Brown’s testimony that both disclosures were spontaneous was uncorroborated except by the children themselves. Finally, McCrory argues that Brown’s relationship with the
 
 *203
 
 children prior to the disclosures had been tenuous. He asserts that Brown had exercised little visitation with A.B. prior to the disclosure of abuse. McCrory also argues that B.B. would not have disclosed abuse to Brown because Brown was not his natural father and had not been awarded any visitation with the child up to that point. McCrory also suggests that the relationship between Brown and B.B. might have been strained because B.B. was a product of his wife’s extramarital affair and that that affair had occurred while Brown was serving in the Navy.
 

 ¶ 34. After a thorough review of the record, we can find no abuse of discretion in the trial court’s findings. The trial court considered the facts McCrory cites in his arguments, but it also heard competing evidence on many of those points. Brown and the children offered an explanation of why no disclosure was made at the first CAC interview, and Brown offered competing characterizations of his relationship with the children. In the end, the trial court found Brown’s and the children’s testimonies to be credible. We can find no basis to disturb that finding. This issue is without merit.
 

 ¶ 35. THE JUDGMENT OF THE CIRCUIT COURT OF RANKIN COUNTY OF CONVICTION OF COUNT I, SEXUAL BATTERY, AND COUNT II, SEXUAL BATTERY, AND SENTENCE OF THIRTY-FIVE YEARS IN THE CUSTODY OF THE MISSISSIPPI DEPARTMENT OF CORRECTIONS, WITH THIRTY YEARS TO SERVE AND FIVE YEARS OF POST-RELEASE SUPERVISION, FOR EACH COUNT WITH THE SENTENCES TO RUN CONCURRENTLY, IS AFFIRMED. ALL COSTS OF THIS APPEAL ARE ASSESSED TO RANKIN COUNTY.
 

 KING, C.J., LEE, P.J., GRIFFIS, BARNES, ISHEE, ROBERTS AND MAXWELL, JJ., CONCUR. IRVING, J., CONCURS IN RESULT ONLY.
 

 [1]
 

 . To protect the anonymity of minor victims of sexual abuse, we use fictitious names or initials to represent their names and the names of close relatives.
 

 [2]
 

 . The State instead asked B.B. where he "lived” when the acts occurred.
 

 [3]
 

 . It is clear from the record that the "they" A.B. referred to were his mother and McCro-ry and that this apartment was located in Pearl, Mississippi, in Rankin County.
 

 [4]
 

 . The second interview, conducted in Brandon, forms the basis for Ervin’s testimony addressed in the third issue, above. Ervin was not involved in the first CAC interview, which was held approximately one month before the second interview.
 

 [5]
 

 . It is unclear exactly what transpired during the first CAC interview, but Brown stated that the children later told him that they had "lied.” On cross-examination, A.B. had testified that he had not disclosed the abuse at the first CAC interview because he "was scared [his mother and McCrory] would get mad at [him].” B.B. testified that he did not remember, the first interview.