KITCHENS, Justice,
dissenting:
¶ 44. Because the jury could have found from instructions it was provided that Christopher Lee Baxter was guilty of two separate and distinct courses of criminal conduct, I find that the prosecution was relieved of its burden of proving its theory of guilt beyond a reasonable doubt. I therefore dissent.
¶45. Jury Instruction S-3A informed the jury of the elements of capital murder of a peace officer:
If you find from the evidence in this case, beyond a reasonable [doubt] that:
(1) On or about July 21, 2010, in George County, Mississippi;
(2) CHRISTOPHER LEE BAXTER, alone or in conjunction with another, killed Garry Welford, a human being and peace officer, while Garry Welford was acting in his official capacity as a peace officer, with knowledge that Garry Welford was a peace officer,
(3) and that said killing was done without authority of law by any means or in any manner, in the commission of an act eminently dangerous to others and evincing a depraved heart, regardless of human life, although without any premeditated design to effect the death of any particular individual
(4) and not in necessary self-defense, then you shall find the Defendant, CHRISTOPHER LEE BAXTER, guilty of Capital Murder.
Instruction S-5 then informed the jury that:
One who willfully, unlawfully, and felo-niously aids, abets, assists, or otherwise encourages the commission of a crime is just as guilty under the law as if he or *407 she had committed the whole crime with his or her own hands.
Instruction S-6A provided the following:
The guilt of a defendant in a criminal case may be established without proof that the defendant did every act constituting the offense alleged. The law recognizes that, ordinarily, anything a person can do for himself may also be accomplished by that person through the direction of another person as his or her agent, or by acting in concert with, or under the direction of, another person or persons in a joint effort or enterprise.
If another person is acting under the direction of the defendant or if the defendant joins another person and performs acts with the intent to commit a crime, then the law holds the defendant responsible for the acts and conduct of such other persons just as though the defendant had committed the acts or engaged in such conduct.
Before any defendant may be held criminally responsible for the acts of others, it is necessary that the accused deliberately associate himself in some way with the crime and participate in it with the intent to bring about the crime.
Of course, mere presence at the scene of a crime and knowledge that a crime is being committed are not sufficient to establish that a defendant either directed or aided and abetted the crime unless you find beyond a reasonable doubt that the defendant was a participant and not merely a knowing spectator.
Finally, Instruction S-7 was as follows:
The Court instructs the Jury that it is not necessary that an unlawful act of the Defendant be the sole cause of death. Responsibility attaches if the act of the Defendant contributed to the death. If you believe the Defendant committed an unlawful act or aided and abetted another in committing an unlawful act that contributed to the death of Garry Wel-ford, then the Defendant is not relieved of responsibility by the fact that other causes may have contributed to his death.
(Emphasis added.)
¶ 46. Baxter argues in his Petition for Writ of Certiorari that the jury, based on Instruction S-7, could convict him “if his failure to report for his sentencing on the drug charges was an ‘act’ (under the second sentence of the instruction) or an ‘unlawful act’ (under the third sentence of the instruction) ‘that, contributed to the death of Gar[r]y Welford.’ ” Baxter made the same argument in the Court of Appeals, stating that Instruction S-7 deprived him of his right “to have the jury find every element of the charge against him beyond a reasonable doubt.” At trial, Baxter’s counsel had objected to Instruction S-7 by stating: “[fit’s cumulative, and it’s confusing and S-6A has everything in it that is required to be instructed to the jury concerning this accomplice liability issue.” Following conviction, Baxter filed a Motion for Judgment Notwithstanding the Verdict in which he argued that Instruction S-7 incorrectly stated the law and “unconstitutionally diminished the State’s burden of proof.”
¶ 47. An accused has a fundamental right under the Mississippi Constitution and the U.S. Constitution to have the State prove guilt beyond a reasonable doubt. McBride v. State, 934 So.2d 1033, 1038 (Miss.Ct.App.2006) (citing In re Winship, 397 U.S. 358, 364, 90 S.Ct. 1068, 25 L.Ed.2d 368 (1970)); Evans v. State, 919 So.2d 231, 235 (Miss.Ct.App.2005). Nevertheless, this Court has recognized “that criminal defendants in state courts do not have a federal constitutional right to a unanimous verdict by a twelve-member jury.” Fulgham v. State, 46 So.3d 315, *408 324 (Miss.2010) (citations omitted); see Johnson v. Louisiana, 406 U.S. 356, 358, 92 S.Ct. 1620, 32 L.Ed.2d 152 (1972) (due process of law not violated by a state law requiring less-than-unanimous jury verdicts); Apodaca v. Oregon, 406 U.S. 404, 412, 92 S.Ct. 1628, 32 L.Ed.2d 184 (1972) (same). However, “Article 3, Section 31 of the Mississippi Constitution[11] has been interpreted to provide criminal defendants the right to a unanimous jury verdict of twelve impartial jurors.” Fulgham v. State, 46 So.3d 315, 324 (Miss.2010) (citing Markham v. State, 209 Miss. 135, 137, 46 So.2d 88, 89 (Miss.1950)).
¶ 48. This Court has declared that, “ ‘[w]hen read together, if the jury instructions state the law of the case and create no injustice, then no reversible error will be found.’” Watkins v. State, 101 So.3d 628, 633 (Miss.2012) (quoting Bailey v. State, 78 So.3d 308, 315 (Miss.2012)). In the present case, the given jury instructions allowed the jury to find beyond a reasonable doubt that Baxter was guilty of capital murder if it found either that Baxter was a principal (i.e., Baxter was driving) or that Baxter was an aider and abettor to Brandy Williams (i.e., Baxter was directing, and controlling Williams, who was driving).
¶ 49. In Fulgham, Kristi Fulgham was convicted of capital murder of her husband, with the underlying offense, being robbery. Though not alleged in the indictment, the State argued that the husband was robbed of his wallet and/or a central processing unit (CPU) it contended were taken from the marital home. Fulgham argued that the denial of an instruction requiring a unanimous jury finding of the specific property stolen “created a situation in which certain members of the jury could have found that Fulgham had robbed Joey of his wallet while other jurors could have found that she had taken the CPU.” Fulgham, 46 So.3d at 323. This Court held that the “personal property of another” element of the crime of robbery underlying the capital murder had been proven beyond a reasonable doubt, regardless of whether the jury decided Fulgham had stolen the wallet, the CPU, or both: “[b]y its verdict, twelve jurors unanimously agreed that Fulgham had robbed Joey of personal property.” Id. at 323, 326. In that context, this Court rejected the argument that “acquittal would be required if six believed [Fulgham] had stolen [her husband’s] money and the other six believed she had stolen the CPU.” Id. at 326.
¶ 50. The case at hand is readily distinguishable. In Fulgham, in order for the “personal property of another” element to be satisfied, a majority of this Court decided that it did not matter whether the jury found that Fulgham had stolen the wallet, the CPU, or both. Either way, she would have been guilty of the underlying offense of robbery. Here, it is of crucial importance whether Baxter was driving, which, if so, would support the State’s theory that Baxter was the actual perpetrator in the capital murder, or whether Williams was driving and Baxter was directing her actions, supporting the State’s alternative theory that Baxter aided and abetted Williams in the capital murder. The crime of capital murder of a peace officer and the crime of aiding and abetting are different crimes with separate elements and separate mens rea requirements.
*409 ¶ 51. For the jury to find a defendant guilty of capital murder of a peace officer as a perpetrator, it must find, beyond a reasonable doubt, that the defendant committed “murder ... perpetrated by killing a peace officer ... while such officer ... is acting in his official capacity, and with knowledge that the victim was a peace officer....” Miss.Code Ann. § 97-3-19(2)(a) (Rev.2014). “Murder,” as defined by the statute, includes in pertinent part:
(1) The killing of a human being without. authority of law by any means or in any manner ... in the following cases:
[[Image here]]
(b) [w]hen done in the commission of an act eminently dangerous to others and evincing a depraved heart, regardless of human life, although without any premeditated design to effect the death of any particular individual....
Miss.Code Ann. § 97-3-19(1)(b) (Rev. 2014). Conversely, “ ‘[a]ny person who is present at the commission of a criminal offense and aids, counsels, or encourages another in the commission of that offense is an ‘aider and abettor’ and is equally guilty with the principal offender.’ ” Graham v. State, 120 So.3d 382, 389 (Miss. 2013), reh’g denied (Sept. 12, 2013) (quoting Swinford v. State, 653 So.2d 912, 915 (Miss.1995)) (emphasis added). The State must prove that the defendant, “although not [a] direct perpetrator[ ] of a crime, [was] yet present at its commission, doing some act to render aid to the actual perpetrator.” Id. (quoting Smith v. State, 237 Miss. 498, 115 So.2d 318, 322 (1959)) (emphasis added).
¶ 52. A conviction of capital murder of a peace officer as an actual or direct perpetrator requires a finding, beyond a reasonable doubt, that the defendant killed a peace officer while the peace officer was acting in his official capacity, that the defendant knew that the victim was a peace officer, and that the defendant killed the peace officer during the commission of an act eminently dangerous to others and evincing a depraved heart. For the jury to find that the defendant was guilty of the capital murder of a peace officer as an aider and abettor would require a finding, beyond a reasonable doubt, that the defendant aided, counseled, or encouraged another in the commission of such capital murder and that the defendant was present at the crime’s commission.
¶ 53. In Schad v. Arizona, the United States Supreme Court considered “whether a first-degree murder conviction under jury instructions that did not require agreement on whether the defendant was guilty of premeditated murder or felony murder is unconstitutional....” Schad v. Arizona, 501 U.S. 624, 627, 111 S.Ct. 2491, 115 L.Ed.2d 555 (1991) (plurality opinion). The Court noted that, under Arizona law, “the attempt to commit a robbery is ‘the legal equivalent of ... deliberation, premeditation, and design.’ ” Id. (quoting State v. Serna, 69 Ariz. 181, 211 P.2d 455, 459 (1949)). Stated differently, “neither premeditation nor the commission of a felony is formally an independent element of first-degree murder; they are treated as mere means of satisfying a mens rea element of high culpability.” Schad, 501 U.S. at 639, 111 S.Ct. 2491. The Court ultimately affirmed Schad’s conviction, holding that the Constitution was not offended by the jury’s having been instructed on both premeditated murder and felony murder to support its verdict of guilty of first-degree murder:
We have never suggested that in returning general verdicts in such cases the jurors should be required to agree upon a single means of commission, any more than the indictments were required to specify one alone. In these *410 cases, as in litigation generally, “different jurors may be persuaded by different pieces of evidence, even when they agree upon the bottom line. Plainly there is no general requirement that the jury reach agreement on the preliminary factual issues which underlie the verdict.” McKoy v. North Carolina, 494 U.S. 433, 449, 110 S.Ct. 1227, 1236-1237, 108 L.Ed.2d 369 (1990) (Blackmun, J., concurring) (footnotes omitted).
Id. at 631-32, 111 S.Ct. 2491 (emphasis added). In the present case, at issue are separate courses of criminal conduct, each requiring proof beyond a reasonable doubt of separate and distinct elements, and not merely “preliminary factual issues which underlie the verdict.”
¶ 54. Justice White dissented, joined by Justices Marshall, Blackmun, and Stevens. The dissent posited that, while premeditated murder and felony murder “both lead to a conviction for first-degree murder” under Arizona law, “they do so by divergent routes possessing no elements in common except the fact of a murder.” Schad, 501 U.S. at 653, 111 S.Ct. 2491 (White, J., dissenting). “Unlike premeditated murder, felony murder does not require that the defendant commit the killing or even intend to kill, so long as the defendant is involved in the underlying felony.” Id. at 654, 111 S.Ct. 2491. Conversely, “felony murder — but not premeditated murder — requires proof that the defendant had the requisite intent to commit and did commit the underlying felony.” Id. Justice White continued:
Consequently, a verdict that simply pronounces a defendant “guilty of first-degree murder” provides no clues as to whether the jury agrees that the three elements of premeditated murder or the two elements of felony murder have been proved beyond a reasonable doubt. Instead, it is entirely possible that half of the jury believed the defendant was guilty of premeditated murder and not guilty of felony murder/robbery, while half believed exactly the reverse. To put the matter another way, the plurality affirms this conviction without knowing that even a single element of either of the ways for proving first-degree murder, except the fact of a killing, has been found by a majority of the jury, let alone found unanimously by the jury as required by Arizona law. A defendant charged with first-degree murder is at least entitled to a verdict — something petitioner did not get in this case as long as the possibility exists that no more than six jurors voted for any one element of first-degree murder, except the fact of a killing.
Id. (emphasis added).
¶ 55. My thinking regarding the present case is more in line with that of Justice White’s dissent in Schad, though that position is but a persuasive one.[12] Here, we are faced with a verdict[13] which “provides no clues as to whether the jury agree[d]” that the elements of capital murder of a peace officer as a principal were met be *411 yond a reasonable doubt. Id. Nor can we glean with any certainty whether the jury instead fixed itself upon a finding of the State’s alternative argument, that Baxter was not driving but that he was present at the commission of Williams’s capital murder of Sheriff Welford and that he acted to render aid to her commission of that crime. And while an aider and abettor is, under our law, a principal, it is possible that half of the jury believed Baxter was guilty as a principal (i.e., he was the driver) in the capital murder of Sheriff Wel-ford and not guilty as an aider and abettor of Williams’s crime, while the other half believed exactly the reverse.[14] In such a scenario, half the jury would have believed that Baxter had been driving and directly committed the capital murder of Sheriff Welford, and half the jury would have believed that Baxter aided and abetted Williams’s commission of the crime. Thus it is not certain upon which course of criminal conduct the jury settled, and, therefore, the unanimity of the jury was not established and remains in doubt. Neither the trial court nor this Court can tell whether each element of the crime was found beyond a reasonable doubt. This constitutes reversible error, as the defendant is entitled to a unanimous verdict whereby all twelve jurors agree upon the same thing.
¶ 56. Analogously, the United States Supreme Court considered “whether a jury has to agree unanimously about which specific violations make up the ‘continuing series of violations’” for the purpose of finding that the defendant was engaged in a “continuing criminal enterprise,” as defined by 21 U.S.C. § 848(c). Richardson v. United States, 526 U.S. 813, 815, 119 S.Ct. 1707, 143 L.Ed.2d 985 (1999). According to the Supreme Court, the federal statute “requires jury unanimity in respect to each individual ‘violation.’ ” Id. at 824, 119 S.Ct. 1707. More specifically:
If the statute creates a single element, a “series,” in respect to which individual violations are but the means, then the jury need only agree that the defendant committed at least three of all the underlying crimes the Government has tried to prove. The jury need not agree about which three. On the other hand, if the statute makes each “violation” a separate element, then the jury must agree unanimously about which three crimes the defendant committed.
Id. at 818, 119 S.Ct. 1707. The Court continued:
The question before us arises because a federal jury need not always decide unanimously which of several possible sets of underlying brute facts make up a particular element, say, which of several possible means the defendant used to commit an element of the crime. Schad v. Arizona, 501 U.S. 624, 631-632, 111 S.Ct. 2491, 115 L.Ed.2d 555 (1991) (plurality opinion); Andersen v. United States, 170 U.S. 481, 499-501, 18 S.Ct. 689, 42 L.Ed. 1116 (1898). Where, for example, an element of robbery is force or the threat of force, some jurors might conclude that the defendant used a knife to create the threat; others might conclude he used a gun. But that disagreement — a disagreement about means— would not matter as long as all 12 jurors unanimously concluded that the Government had proved the necessary related element, namely, that the defendant had threatened force. See McKoy v. North Carolina, 494 U.S. 433, 449, 110 S.Ct. *412 1227, 108 L.Ed.2d 369 (1990) (Blaekmun, J., concurring).
Richardson, 526 U.S. at 817, 119 S.Ct. 1707. Thus, at least under federal law, the means of commission of a particular criminal offense does not matter for purposes of unanimity, so long as the means allows the jury to find a single, necessary element. But where the jury must find separate, individual elements in support of a larger criminal offense, the jury must concur unanimously. Id. at 818, 119 S.Ct. 1707. Here, separate courses of criminal conduct, each requiring proof beyond a reasonable doubt of separate and distinct elements, seem to me to require a unanimous finding by the jury either that Baxter was guilty of capital murder of a peace officer for having driven the car which struck and killed Sheriff Welford or that Baxter was guilty of capital murder of a peace officer for having aided and abetted the capital murder of a peace officer perpetrated by Williams.
¶ 57. In the present case, we do not know whether the jury settled on finding Baxter guilty of capital murder of a peace officer as the actual, direct perpetrator as the driver of the vehicle which struck and killed Sheriff Welford, or as an aider and abettor, having encouraged Williams so to do. It cannot be said that the jury unanimously found Baxter guilty beyond a reasonable doubt on each and every element of the crime. I would, therefore, reverse both the Court of Appeals’ judgment and the trial court’s conviction and sentence and remand this case to the Circuit Court of George County for a new trial.
KING, J., JOINS THIS OPINION.

. "The right of trial by jury shall remain inviolate, but the Legislature may, by enactment, provide that in all civil suits tried in the circuit and chancery court, nine or more jurors may agree on the verdict and return it as the verdict of the jury." Miss. Const, art. 3, § 31.

. And, indeed, Schad was a plurality opinion. Justice Scalia, who would have been the fifth vote in the Court's majority, wrote an opinion concurring in part and concurring in the judgment in which he wrote that "the plurality provides no satisfactory explanation of why (apart from the endorsement of history) it is permissible to combine in one count killing in the course of robbery and killing by premeditation. The only point it makes is that the depravity of mind required for the two may be considered morally equivalent." Schad, 501 U.S. at 651, 111 S.Ct. 2491 (Sca-lia, J., concurring in part and concurring in the judgment).

. "WE, THE JURY, FIND THE DEFENDANT, CHRISTOPHER LEE BAXTER, GUILTY OF CAPITAL MURDER.”

. It also is possible that some other numerical division, totaling twelve, occurred, and neither can we rule out the possibility of a 12-0 verdict on one or the other of the State's theories of guilt.